Joseph C. SPAGNOLA, Jr.

v.

William MATHIS, Office of Management and Budget, et al., Appellants.

Joseph C. SPAGNOLA

v.

William MATHIS, et al., Appellants.

Joseph C. SPAGNOLA, Jr., Appellant,

v.

William MATHIS, Office of Management & Budget, et al.

Michael E. HUBBARD, Appellant,

v.

U.S. ENVIRONMENTAL PROTECTION AGENCY, Administrator, et al.

Nos. 84–5530, 84–5659, 84–5822 and 85–5145.

United States Court of Appeals, District of Columbia Circuit.

Argued April 29, 1987.

Decided Sept. 30, 1988.

George M. Chuzi, Washington, D.C., for appellant in No. 84–5822.

Peter B. Broida, Washington, D.C., for appellant in No. 85–5145.

Joseph B. Kennedy with whom Thomas M. Devine, Arthur B. Spitzer and Elizabeth Symonds, Washington, D.C., were on the brief, for amici curiae, The Government Accountability Project and the American Civil Liberties Union of the National Capital Area urging affirmance of the panel decision in No. 84–5822.

Stuart H. Newberger, Asst. U.S. Atty., for appellees in both cases, with whom Joseph E. diGenova, U.S. Atty.,* Royce C. Lamberth, Asst. U.S. Atty.,* R. Craig Lawrence, Michael L. Martinez and Scott T. Kragie, Asst. U.S. Attys., were on the brief for appellees in No. 85–5145, and with whom Joseph E. diGenova, U.S. Atty.,* Royce C. Lamberth* and R. Craig Lawrence, Asst. U.S. Attys., Washington, D.C., were on the brief for appellees in No. 84–5822.

Michael J. Ryan, Asst. U.S. Atty., Washington, D.C., also entered an appearance for appellees in No. 84–5822.

Edith S. Marshall, Asst. U.S. Atty., Washington, D.C., also entered an appearance for appellees in No. 85–5145.

Before WALD, Chief Judge, ROBINSON, MIKVA, EDWARDS, RUTH B. GINSBURG, BORK,** STARR, SILBERMAN, BUCKLEY, WILLIAMS and D.H. GINSBURG, Circuit Judges.

Opinion PER CURIAM.

PER CURIAM:

On December 5, 1986, two panels of this circuit issued separate, conflicting opinions regarding the availability of Bivens [1] remedies to litigants challenging federal personnel actions for whom Congress has declined to provide full administrative remedies sub-

---

* At the time the brief was filed.

** Judge Bork participated in the argument but not the decision in these cases.

ject to judicial review under the Civil Service Reform Act (CSRA).[2] See Hubbard v. EPA, 809 F.2d 1, 6–11 (D.C.Cir.1986); Spagnola v. Mathis, 809 F.2d 16, 19–28 (D.C.Cir.1986). On January 6, 1987, the full court vacated the conflicting portions of the two panel opinions and scheduled the matter for rehearing en banc. After argument, we ordered proceedings in these cases to be held in abeyance pending the Supreme Court's disposition of a petition for certiorari in Kotarski v. Cooper, 799 F.2d 1342 (9th Cir.1986), a case presenting issues similar to those before us. We now decide, with fresh guidance from the Supreme Court, that "special factors counsel[ ]" against the creation of Bivens remedies in these circumstances. See Bivens v. Six Unknown Federal Narcotics Agents, 403 U.S. 388, 396, 91 S.Ct. 1999, 2004, 29 L.Ed.2d 619 (1971). Accordingly, we affirm the dismissal of appellants' Bivens claims.

## I.

The facts underlying the constitutional claims of Michael Hubbard and Joseph Spagnola are fully set forth in the respective panel opinions and need only briefly be recounted here. Appellant Hubbard, presently a detective with the District of Columbia Metropolitan Police Department, alleges that he was denied employment as a criminal investigator with the Environmental Protection Agency (EPA) because of his exercise of first amendment rights. In particular, Hubbard contends that the EPA and defendant Peter Beeson, an agency hiring official, rejected his job application due to reports that Hubbard had communicated with the press during an investigation of narcotics use by employees and members of Congress in 1981. Hubbard maintains that his communications with the press were "protected speech," and that Beeson's rejection of his application on the basis of such speech was in violation of the

---

**1.** Bivens v. Six Unknown Fed'l Narcotics Agents, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

**2.** Pub.L. No. 95–454, 92 Stat. 111 (codified as amended in scattered sections of 5 U.S.C.).

first amendment. In addition to seeking equitable relief against the EPA, Hubbard sought damages from Beeson personally under the *Bivens* doctrine. The district court held that *Bush v. Lucas*, 462 U.S. 367, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983), precludes a *Bivens* remedy in this situation, and accordingly dismissed Hubbard's damages claim.

Joseph C. Spagnola, Jr., an employee of the federal government at all times relevant to this action, sought damages and injunctive relief under the first amendment and 42 U.S.C. § 1985(1) (1982) against two officials for whom he worked in the Office of Federal Procurement Policy of the Office of Management and Budget (OMB). According to Spagnola, the defendants thwarted his efforts to gain promotion beyond the GS–14 level and conspired to prevent him from pursuing professional development in the area of government contracts in retaliation for his "whistleblowing" activities. Spagnola appealed from the district court's dismissal of his *Bivens* claims for damages against the OMB officials.

While the circumstances surrounding the first amendment claims of Hubbard and Spagnola differ markedly, the CSRA accords claimants in their respective positions substantially the same relief. Under 5 U.S.C. § 1206, each could petition the Office of Special Counsel (OSC) of the Merit Systems Protection Board (MSPB) alleging a "prohibited personnel practice." [3] *See* 5 U.S.C. § 1206(a)(1) (1982); *see also* 5 C.F.R. §§ 1250–61 (1988) (OSC regulations).[4] If OSC, in its discretion, believed the allegations meritorious, it was required to report that along with any findings or recommendation of corrective action to the agency involved. If the agency failed to take action, the OSC could have requested the MSPB to order appropriate corrective action. *See* 5 U.S.C. § 1206(c)(1)(A) & (B) (1982). Irrespective of the course of action chosen by OSC, judicial review for Hubbard and Spagnola, if available at all, was limited to ensuring that OSC conducted the requisite "adequate inquiry" into the allegations. *See Cutts v. Fowler*, 692 F.2d 138, 140 (D.C.Cir.1982); 5 U.S.C. § 1207(c) (1982); *see also Carducci v. Regan*, 714 F.2d 171, 175 (D.C.Cir.1983). Neither Hubbard nor Spagnola could claim the more elaborate administrative protections—including judicial review—that Congress reserved for incumbent employees aggrieved by major personnel actions (*e.g.*, removals, reductions in grade or pay, suspensions of more than 14 days). *See* 5 U.S.C. §§ 7511–14, 7701–03 (1982).

Prior to initiating their federal actions, both Hubbard and Spagnola petitioned OSC for an investigation into alleged "prohibited personnel practices." In each case, the claimants filed suit in district court before

---

3. The "prohibited personnel practices" Congress included in the CSRA remedial scheme are set forth at 5 U.S.C. § 2302. The definition sweeps broadly to accommodate the "tak[ing] or fail[ure] to take any ... personnel action if the taking or failure to take such action violates any law, rule, or regulation implementing, or directly concerning, the merit system principles contained in section 2301 of this title." 5 U.S.C. § 2302(b)(11) (1982). One such merit principle provides:

All employees and applicants for employment should receive fair and equitable treatment in all aspects of personnel management ... with proper regard for their ... constitutional rights.

5 U.S.C. § 2301(b)(2) (1982). Both Hubbard's and Spagnola's allegations implicate this principle squarely and we are therefore convinced that their constitutional claims are cognizable as "prohibited personnel practices" within the CSRA system. *See Pinar v. Dole*, 747 F.2d 899, 906 (4th Cir.1984), *cert. denied*, 471 U.S. 1016,

105 S.Ct. 2019, 85 L.Ed.2d 301 (1985). *See also* H.R. Rep. No. 1717, 95th Cong., 2d Sess. 131 (1978) U.S.Code Cong. & Admin.News 1978, pp. 2723, 2853 (observing that "prohibited personnel practices" include violations of constitutional rights of applicants and employees). Hubbard argues that, as an *applicant* for federal employment, his claims were not appealable within the CSRA system, but the letter of the statute suggests otherwise. *See* 5 U.S.C. § 2302(a)(2)(A)(i) (1982) (including "an appointment" within the class of "personnel actions" covered by CSRA).

4. Hubbard, as a veteran, had the additional right to Office of Personnel Management (OPM) review of the "passover document" required to be prepared in the event a veteran is rejected for a federal job. *See* 5 U.S.C. § 3318(b)(1) (1982). At Hubbard's request, OPM performed the required review and ultimately found no evidence that Hubbard was improperly passed over.

completion of the OSC investigation. OSC's ultimate disposition of their petitions was, in any event, the same: it found insufficient evidence to suggest a "prohibited personnel practice" in either case.

## II.

■ In the *Bivens* case itself, the Supreme Court acknowledged that the power to make policy concerning constitutional remedies was not the exclusive province of the judiciary. The court observed that where there is an "explicit congressional declaration" that injured parties should be "remitted to another remedy, equally effective in the view of Congress," *Bivens,* 403 U.S. at 397, 91 S.Ct. at 2005, or where there are "special factors counselling hesitation in the absence of affirmative action by Congress," *id.* at 396, 91 S.Ct. at 2005, the judiciary should decline to exercise its discretion in favor of creating damages remedies against federal officials. *Accord Bush v. Lucas,* 462 U.S. 367, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983); *Chappell v. Wallace,* 462 U.S. 296, 103 S.Ct. 2362, 76 L.Ed.2d 586 (1983). In deference to these concerns, the Court's "more recent decisions have responded cautiously to suggestions that *Bivens* remedies be extended into new contexts." *Schweiker v. Chilicky,* —— U.S. ——, 108 S.Ct. 2460, 2467, 101 L.Ed.2d 370 (1988).[5]

Indicative of this caution is *Bush v. Lucas,* 462 U.S. 367, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983), in which the Court, for the first time, found a statutory system of "comprehensive procedural and substantive provisions giving meaningful remedies against the United States," *id.* at 368, 103 S.Ct. at 2406, to constitute a "special factor" counselling hesitation against creating a *Bivens* remedy. *Id.* at 389–90, 103

S.Ct. at 2417–18. In *Bush,* as here, the remedial provisions of the CSRA were at issue. Acknowledging that the CSRA's "remedies [did] not provide complete relief for the plaintiff[ ]" in that case, *id.* at 388, 103 S.Ct. at 2417, the Court nevertheless declined to supplement the employee's statutory remedies with a *Bivens* action. To the Court, the question before it was not one "concern[ing] the merits of the particular remedy that was sought." *Id.* at 380, 103 S.Ct. at 2413. Rather, the question was "who should decide whether such a [damages] remedy should be provided[,]" Congress or the judiciary. *Id.* Ultimately, the Court reasoned that "Congress is in a far better position than a court to evaluate the impact of a new species of litigation between federal employees on the efficiency of the civil service." *Id.* at 389, 103 S.Ct. at 2417.

Because he was challenging a "major personnel action," the plaintiff-employee in *Bush,* unlike Hubbard and Spagnola, was able to invoke certain of the CSRA's elaborate remedial processes which, by statute, culminate in judicial review. *See* 5 U.S.C. § 7703 (1982); *Bush,* 462 U.S. at 386–88, 103 S.Ct. at 2415–17. Whether the Court intended *Bush* to bar damages actions for those employees or applicants for whom the CSRA remedies are not so complete has been the source of great debate. Focusing on language in the *Bush* opinion that suggests a detached inquiry into the meaningfulness of the *particular* remedies provided to individual claimants under the CSRA,[6] some courts of appeals have conducted that inquiry and have found certain CSRA remedies wanting. Accordingly, they have declined to read *Bush* as precluding *Bivens* remedies in those contexts. *See, e.g., McIntosh v. Weinberger,* 810 F.2d

---

5. For instance, in *Chappell v. Wallace,* 462 U.S. 296, 103 S.Ct. 2362, 76 L.Ed.2d 586 (1983), the Court held that the "unique disciplinary structure of the Military Establishment and Congress' activity in the field constitute 'special factors' which dictate that it would be inappropriate to provide enlisted military personnel a *Bivens*–type remedy against their superior officers." 462 U.S. at 304, 103 S.Ct. at 2368.

6. In his opinion for the majority in *Bush,* Justice Stevens at two points appeared to suggest that the specific remedies extended under the CSRA to the petitioner were "meaningful." *See* 462 U.S. at 368, 386, 103 S.Ct. at 2406, 2415; *see also id.* at 378, 103 S.Ct. at 2411 (observing that "[t]he existing civil service remedies for a demotion in retaliation for protected speech are clearly constitutionally adequate"). Nevertheless, the Court failed to set forth the standards it may have applied in forming such a conclusion.

1411, 1434–36 (8th Cir.1987) (holding that employee subjected to minor personnel action could sue supervisor for damages), *vacated sub nom. Turner v. McIntosh,* —— U.S. ——, 108 S.Ct. 2861, 101 L.Ed.2d 898 (1988); *Kotarski v. Cooper,* 799 F.2d 1342, 1348–49 (9th Cir.1986) (holding that probationary employee could pursue *Bivens* action against supervisor), *vacated,* —— U.S. ——, 108 S.Ct. 2861, 101 L.Ed.2d 897 (1988); *see also Krodel v. Young,* 748 F.2d 701, 712 n. 6 (D.C.Cir.1984) (suggesting in dictum that statutory right to petition OSC, without more, would not preclude a *Bivens* claim for damages), *cert. denied,* 474 U.S. 817, 106 S.Ct. 62, 88 L.Ed.2d 51 (1985); Note, Bivens *Doctrine in Flux: Statutory Preclusion of a Constitutional Cause of Action,* 101 HARV.L.REV. 1251, 1262–65 (1988) (arguing that OSC remedy is constitutionally inadequate). Other circuits, acting in the post-*Bush* environment, have reached the opposite conclusion. *See Pinar v. Dole,* 747 F.2d 899, 909 (4th Cir. 1984) (declining to create *Bivens* remedy for employee subjected to short suspension), *cert. denied,* 471 U.S. 1016, 105 S.Ct. 2019, 85 L.Ed.2d 30 (1985); *Hallock v. Moses,* 731 F.2d 754, 757 (11th Cir.1984) (denying damages remedy to victim of "harassment and retaliation"). It was this very issue, whether case-specific analysis is required of the particular statutory remedies available to a claimant, over which the original panels in the cases before us disagreed. *See Hubbard,* 809 F.2d at 7–9; *Spagnola,* 809 F.2d at 22–24.

The Supreme Court's latest pronouncement on the special factors doctrine in *Schweiker v. Chilicky,* —— U.S. ——, 108 S.Ct. 2460, 101 L.Ed.2d 370 (1988), goes a long way toward resolving the debate. In *Chilicky,* the Court faced the question of whether Social Security disability claimants whose benefits had been withdrawn unconstitutionally could seek damages against those responsible for the termination. Petitioners, state and federal disability review officials charged with conducting "continuing disability reviews" pursuant to a 1980 congressional enactment, *see* Pub.L. 96–265, § 311, as amended, 42 U.S.C. § 421 (1982 & Supp. III), argued that in view of the comprehensive and elaborate review and benefit-restoration procedures available to claimants under the Social Security Disability Benefits Reform Act of 1984 (Disability Act), the Court should decline to provide a *Bivens* remedy in this context. The Court agreed, finding the case indistinguishable from *Bush.* 108 S.Ct. at 2468. Noting that the Disability Act's "system for protecting [claimants'] rights is, if anything, considerably more elaborate than the civil service system considered in *Bush,"* *id.,* the Court concluded that "Congress is in a better position to decide whether or not the public interest would be served by creating [a damages remedy]." *Id.* at 2469.

*Chilicky* is significant not only for its holding,[7] but also for its analysis of *Bush.* In applying the *Bush* "special factors" doctrine to the Disability Act claims before it, the *Chilicky* Court made clear that it is the comprehensiveness of the statutory scheme involved, not the "adequacy" of specific remedies extended thereunder, that counsels judicial abstention. *Id.* at 2467 (citing *Bush* for "[c]onclu[sion] that the administrative *system* created by Congress 'provides meaningful remedies....'" (quoting *Bush,* 462 U.S. at 386, 103 S.Ct. at 2415) (emphasis added). Indeed, the Court remarked that "[t]he *absence* of statutory relief ... for a constitutional violation ... does not by any means necessarily imply that courts should award money damages against the officers for the violation." *Id.* 108 S.Ct. at 2467 (emphasis added). If the comprehensiveness of a statutory scheme cannot be gainsaid and it appears that "congressional inaction [in providing for damages remedies] has not been inadver-

---

7. The *Chilicky* plaintiffs, like those in *Bush* and unlike Hubbard and Spagnola, had available an obligatory, elaborate administrative process, with judicial review, through which they could secure retroactive restoration of the withdrawn benefits. *See* 42 U.S.C. § 423(f) & (g) (1982 & Supp.III); 108 S.Ct. at 2464. It is thus possible to distinguish *Chilicky* on the basis that the Court was *not* presented with claimants whose remedies under the congressional scheme were merely discretionary. We nevertheless believe, *infra* at pp. 228–29, that undertaking that effort runs counter to the clear direction of the Supreme Court's "special factors" reasoning.

tent[,]" *id.* at 2468, courts should defer to Congress' judgment with regard to the creation of supplemental *Bivens* remedies.

As we read *Chilicky* and *Bush* together, then, courts must withhold their power to fashion damages remedies when Congress has put in place a comprehensive system to administer public rights, has "not inadvertently" omitted damages remedies for certain claimants, and has not plainly expressed an intention that the courts preserve *Bivens* remedies. In these circumstances, it is not for the judiciary to question whether Congress' "response [was] the best response, [for] Congress is the body charged with making the inevitable compromises required in the design of a massive and complex … program." *Id.* at 2470–71.

### III.

■ These general principles alone weigh heavily in favor of declining to create *Bivens* remedies for claimants situated as Hubbard and Spagnola were. We are further aided, however, by suggestions the Court provided in *Chilicky* as to how *Bush* applies to our cases. For in recounting the principal lesson of *Bush*—that the CSRA's administrative system provides meaningful remedies and thus precludes *Bivens* actions against officials in their individual capacities—the Court included a citation implicitly suggesting that the preclusive effect of *Bush* extends even to those claimants within the system for whom the CSRA provides "no remedy whatsoever." *Id.* at 2467.[8] This passage not only squarely implicates

the material facts of at least one of the cases before us today,[9] it also further indicates that the Court regards a case-by-case examination of the particular administrative remedies available to a given plaintiff as unnecessary.

Accordingly, the Court vacated two courts of appeals cases presenting issues nearly identical to those we confront today and remanded them "for further consideration in light of [*Chilicky*]." *See Cooper v. Kotarski,* — U.S. —, 108 S.Ct. 2861, 101 L.Ed.2d 898 (1988) (mem.); *Turner v. McIntosh,* — U.S. —, 108 S.Ct. 2861, 101 L.Ed.2d 898 (1988) (mem.). One of the cases, *McIntosh,* involved allegations that an Army personnel official "had violated the [ ] due-process rights [of the plaintiff employees] by concealing and destroying certain merit-promotion records." *McIntosh v. Weinberger,* 810 F.2d 1411, 1417 (8th Cir.1987), *vacated sub nom. Turner v. McIntosh,* — U.S. —, 108 S.Ct. 2861, 101 L.Ed.2d 898 (1988). The actions challenged by plaintiffs in that case, like the actions challenged by appellant Spagnola, constituted "minor personnel actions" for which the plaintiffs' sole remedy under the CSRA was a petition to OSC. *Id.* at 1434–36. The plaintiff in *Kotarski,* an incumbent employee who claimed his removal from a probationary supervisorial position violated his fifth and ninth amendment rights, likewise was limited to an OSC petition under the CSRA. *See Kotarski v. Cooper,* 799 F.2d 1342, 1348–49 (9th Cir. 1986), *vacated,* — U.S. —, 108 S.Ct. 2861, 101 L.Ed.2d 898 (1988). Although

8. The passage reads as follows:

Concluding that the administrative system created by Congress "provides meaningful remedies for employees who may have been unfairly disciplined for making critical comments about their agencies," … the Court refused to create a *Bivens* action even though it assumed a First Amendment violation and acknowledged that "existing remedies do not provide complete relief for the plaintiff[.]" … *See also [Bush,* 462 U.S.] at 385, n. 28, 103 S.Ct. at 2414, n. 28 (no remedy whatsoever for short suspensions or for adverse personnel actions against probationary employees).

108 S.Ct. at 2467 (citation and internal footnote omitted).

9. More precisely, it is one of the *fact situations* mentioned in the passage that we find comparable to one of our cases—*Spagnola.* Spagnola challenges a series of minor personnel actions, the class of which includes the "short suspensions" cited in the passage as entitling the recipients to "no remedy whatsoever." 108 S.Ct. at 2467.

The Court appears to say in *Chilicky* that the CSRA extends those aggrieved by minor personnel actions "no remedy whatsoever." We have noted above, *supra* at pp. 225–26, as the original panels in these cases agreed, *see Hubbard,* 809 F.2d at 8; *id.* at 13 (Wald, J., dissenting); *Spagnola,* 809 F.2d at 20, that the Act entitles such claimants to the remedy (albeit a limited one) of an OSC petition.

the Court's orders vacating and remanding *Kotarski* and *McIntosh* cannot be regarded as a reversal, the Court's disposition of these cases certainly counsels us to pay close attention to the developments in "special factors" analysis announced in *Chilicky*.

Furthermore, we do not believe the legislative history of the CSRA supports the application of *Bivens* remedies in the cases before us. After *Chilicky*, it is quite clear that if Congress has "not inadvertently" omitted damages against officials in the statute at issue, then courts must abstain from supplementing Congress' otherwise comprehensive statutory relief scheme with *Bivens* remedies—unless, of course, Congress has clearly expressed a preference that the judiciary preserve *Bivens* remedies. *See Chilicky*, 108 S.Ct. at 2468. We find nothing in the legislative history suggesting that Congress' omission of a damages remedy in the CSRA was anything but advertent, nor do we discern any clear expression of congressional intent that the courts preserve *Bivens* remedies.[10]

Concededly, the Court has provided few, if any, principles governing whether a particular claimant—and his underlying claim—should be included in a given congressional "comprehensive system" for purposes of applying "special factors" analysis. After *Chilicky*, of course, this issue has become critical. Nevertheless, while in some cases the outer boundaries for inclusion in "comprehensive systems" may be less than clear, there can be little doubt as to whether Congress has brought claims like those advanced by Hubbard and Spagnola within CSRA's ambit. This is because the CSRA itself, in one fashion or another, affirmatively speaks to claims such as Hubbard's and Spagnola's by condemning the underlying actions as "prohibited personnel practices."[11] Thus, we are dealing with a statutory scheme that at least technically accommodates appellants' constitutional challenges. *See Carducci v. Regan*, 714 F.2d 171, 175 (D.C.Cir.1983) (describing CSRA's scheme for classifying personnel actions).[12]

## IV.

While we decline to extend *Bivens* remedies to Hubbard and Spagnola, we do not suggest that the CSRA precludes the exercise of federal jurisdiction over the constitutional claims of federal employees and job applicants altogether. *But see Pinar v. Dole*, 747 F.2d 899, 912 (4th Cir.) (holding that the CSRA forecloses judicial review of constitutional claims relating to "minor" personnel actions), *cert. denied*, 471 U.S. 1016, 105 S.Ct. 2019, 85 L.Ed.2d 301 (1985); *Hallock v. Moses*, 731 F.2d 754, 757–58 (11th Cir.1984) (dismissing constitutional claim for equitable relief); *Braun v. United States*, 707 F.2d 922, 926–27 (6th Cir.) (dismissing claims for equitable relief under 5 U.S.C. § 702), *cert. denied sub nom. Hardrich v. United States*, 464 U.S. 991, 104 S.Ct. 481, 78 L.Ed.2d 679 (1983); *Broadway v. Block*, 694 F.2d 979, 986 (5th Cir.1982) (holding that minor personnel actions are "committed to agency discretion by law" within meaning of 5 U.S.C. § 701(a)(2)). On the contrary, time and

---

**10.** The most that can be said for the legislative history of the CSRA is that Congress did not expressly intend to *eliminate* damages remedies. *See generally* H.Rep. No. 1717, 95th Cong., 2d Sess. 127–43 (1978); S.Rep. No. 969, 95th Cong., 2d Sess. 2–10 (1978). Nevertheless, while this may be relevant under the "explicit congressional declaration" exception to allowing damages remedies, *see Bivens*, 403 U.S. at 388, 91 S.Ct. at 1999, it has little relevance to the "special factors" exception after *Chilicky*.

**11.** As we have demonstrated above, *supra* n. 3, the actions challenged by Hubbard and Spagnola are plainly cognizable under the CSRA as "personnel actions" and, in turn, as "prohibited personnel practices."

**12.** The legislative history confirms that Congress' inclusion of constitutional violations within the CSRA scheme was, at minimum, conscious. In describing the breadth of "prohibited personnel practices" under the Act, the House and Senate Conferees observed that

should a supervisor take action against an employee or applicant without regard for the individual's privacy or constitutional rights, such an action could result in dismissal, fine, reprimand, or other discipline for the supervisor.

H.Rep. No. 1717, 95th Cong., 2d Sess. 131 (1978).

again this court has affirmed the right of civil servants to seek equitable relief against their supervisors, and the agency itself, in vindication of their constitutional rights.[13] *See, e.g., Hubbard v. EPA*, 809 F.2d 1, 11 (D.C.Cir.1986); *Williams v. IRS*, 745 F.2d 702, 705 (D.C.Cir.1984); *Cutts v. Fowler*, 692 F.2d 138, 140–41 (D.C.Cir. 1982); *Borrell v. United States Int'l Comm. Agency*, 682 F.2d 981, 989–90 (D.C. Cir.1982). Of course, to the extent any of these cases indicates that civil service employees may pursue *Bivens* remedies for the same violations, they are hereby disapproved.

\*        \*        \*        \*        \*        \*

In light of the Supreme Court's holding in *Schweiker v. Chilicky*, we conclude that "special factors" preclude the creation of a *Bivens* remedy for civil service employees and applicants who advance constitutional challenges to federal personnel actions. Accordingly, we affirm the district courts' dismissal of Hubbard's and Spagnola's *Bivens* claims.

---

**13.** Judicial review, we caution, is limited to constitutional claims; as we have previously held, the CSRA precludes review of the nonconstitutional claims of civil service employees and applicants. *See Carducci v. Regan*, 714 F.2d 171, 175 (D.C.Cir.1983).