Floyd E. SWARTZ, Jr., Plaintiff,

v.

INTERNAL REVENUE SERVICE, Marilynn Smith, Betty Moser, and Don Murray, Defendants.

No. 88–0339–CV–W–8.

United States District Court, W.D. Missouri, W.D.

Dec. 8, 1988.

Floyd E. Swartz, Jr., Kansas City, Mo., pro se.

Edward H. Funston, Asst. U.S. Atty., Kansas City, Mo., for defendants.

### ORDER

STEVENS, District Judge.

Plaintiff, a former employee of the Internal Revenue Service, has filed this *pro se* action alleging that he was illegally dismissed and that he suffered numerous violations of his constitutional rights at the hands of the IRS and several individual defendants.[1] Presently, defendants have moved the court to dismiss this action pursuant to Fed.R.Civ.P. 12(b)(1) and (6). For the following reasons, the court will grant defendants' motion and dismiss plaintiff's complaint.

### I. *Facts*

On February 2, 1987, plaintiff was hired as a tax examining clerk with the IRS at its Kansas City Service Center. The appointment was subject to the completion of a one year probationary period of employment. Several months into the job, plaintiff began having a series of disagreements with his immediate supervisor, Marilynn J. Smith. This quickly escalated into an ongoing clash of wills between the two, culminating in what plaintiff describes as a number of attempts to impede his ability to work by someone taking away all necessary manuals and aids from his desk. Plaintiff attempted to air his grievances within the IRS by appealing to other officials, but was directed to grieve first with Ms. Smith. Eventually, before the expiration of his probationary period and after what plaintiff alleges to be a pattern of systematic harassment practiced by his immediate superiors, plaintiff was finally terminated due to lack of productivity, effective November 21, 1987.

Plaintiff filed his *pro se* complaint in this court on May 6, 1988, alleging that his termination was illegal because it was in breach of the collective bargaining agreement (the "National Centers Agreement" or "NCA II") between the IRS and the National Treasury Employees Union. Plaintiff also alleges that defendants violated his first, fourth, fifth, seventh, and fourteenth amendment rights and seeks actual, compensatory and punitive damages in the amount of $495,715.

Because the court finds that it lacks subject matter jurisdiction over each of plaintiff's various claims, a more detailed review of the facts would serve little use. Hence, for purposes of defendants' motion, the court will assume that plaintiff was subject to some form of on the job harassment. Yet, for reasons that shall soon become clear, Congress has seen fit to limit severely this court's review of the circumstances surrounding plaintiff's termination.

### II. *Analysis*

Within the myriad of various factual allegations made by plaintiff in his twenty-page complaint, the court finds that when all is said and done, plaintiff essentially seeks judicial review of the IRS decision to fire him during his probationary employment period. This the court is unable to do, for with the enactment of the Civil Service Reform Act of 1978 ("CSRA"), Congress sharply limited access to judicial review by those affected by adverse personnel decisions.

The CSRA constitutes a thorough remedial scheme for civil service employees, detailing exactly when judicial review of administrative decisions is available. The Supreme Court has read this extensive statutory framework to preclude judicial review of adverse personnel decisions except where explicitly provided for in the CSRA. *United States v. Fausto*, —— U.S. ——, 108 S.Ct. 668, 673–74, 98 L.Ed.2d 830 (1988). Under the CSRA, judicial review is provided only for actions that are appealable to the Merit Systems Protection Board ("Board") and which result in a final order or decision. *See* 5 U.S.C. §§ 7701 and 7703. In that event, review may be sought exclusively in the Federal Circuit Court of Appeals, not a district court. *See* 5 U.S.C. § 7703(b)(1).

---

1. The three individual defendants are employees of the IRS Kansas City Service Center: plaintiff's former supervisor, Marilynn Smith, supervisory tax examining assistant Betty Moser, and tax examining assistant Don Murray.

In the present case there is no dispute that plaintiff is classified as a "probationary employee." Such employees are excluded from the definition of "employee" under 5 U.S.C. § 7511(a)(1)(A), and consequently have no right of appeal to the Board.[2] Thus, probationary employees have no right to judicial review under sections 7701 and 7703. *See, e.g., Fahy v. United States,* 14 Cl.Ct. 470 (1988). This court can reach no other conclusion given the holding of *Fausto* and its clear implications.

▪ Plaintiff fares no better when the court examines his claim as one for breach of a collective bargaining agreement. In this context as well, this court is still without subject matter jurisdiction, for the CRSA's broad regulation of labor relations also encompasses the formation and enforcement of collective bargaining agreements such as the NCA II. *See* 5 U.S.C. § 7101 *et seq.* Included in this framework is a detailed administrative system for the resolution of grievances arising under a collective bargaining agreement. "Noticeably lacking ... in this scheme ... is any mention of involvement by a Federal District Court." *Yates v. United States Soldiers' and Airman's Home,* 533 F.Supp. 461, 463 (D.D.C.1982). Thus, "the absence of a jurisdictional grant in [the CSRA] is a clear indication that Congress intended to bar actions to enforce collective bargaining agreements in the district court." *Id. See also Walsh v. United States,* 588 F.Supp. 523, 526 (N.D.N.Y.1983); *Tucker v. Defense Mapping Agency,* 607 F.Supp. 1232, 1241 (D.R.I.1985).[3]

▪ Finally, plaintiff also argues that he is entitled to pursue an implied cause of action under the doctrine of *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). Plaintiff maintains that the three named defendants violated several of his constitutional rights.[4] Defendants seek to rely on the principles underlying *Bush v. Lucas,* 462 U.S. 367, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983), to preclude plaintiff from asserting a *Bivens* action in the face of an elaborate remedial system (the CSRA) designed by Congress to rectify the kind of wrong at issue. Plaintiff essentially argues that *Bush* does not apply where a party is otherwise left without a meaningful remedy and cites as authority *McIntosh v. Weinberger,* 810 F.2d 1411, 1434-36 (8th Cir. 1987). Until quite recently plaintiff may have gotten the best of this exchange, for *McIntosh* seemed to require that courts consider the adequacy of existing remedies available to a federal employee/plaintiff in deciding whether to allow *Bivens* actions. In the wake of *Schweiker v. Chilicky,* —— U.S. ——, 108 S.Ct. 2460, 101 L.Ed.2d 370 (1988), this is clearly no longer the case.

In *Chilicky* the Court held that a plaintiff whose claim falls within the scope of an extensive federal remedial scheme is precluded from asserting a *Bivens* action, even though that scheme may not provide the plaintiff with a specific remedy. Instead, the Court emphasized the presumption that, when a subject has been heavily regulated by Congress without any provision regarding a right of action for constitutional violations, courts should not imply

---

2. There are certain regulatory provisions which allow probationary employees limited rights of appeal to the Board under this scheme, where termination was motivated by partisan political reasons or marital status. 5 C.F.R. § 315.806(b). The court notes that plaintiff has not alleged either of these grounds in the present case.

3. Because the court finds that it lacks subject matter jurisdiction over this action, it is unnecessary to inquire whether plaintiff has exhausted his contractual remedies, or whether he has filed his claim within the time allowed by the applicable statute of limitations.

4. Defendants correctly observe that plaintiff has failed to plead these violations with the specificity usually required of civil rights claims, nor can he assert a due process violation, for as a probationary employee he had no property interest in maintaining his job. *See Booher v. United States Postal Service,* 843 F.2d 943, 944 (6th Cir.1988). However, since the court finds that plaintiff cannot even assert a *Bivens* action under the present circumstances, it is unnecessary to dwell on these oversights.

*Bivens* actions unless such "congressional inaction has ... been inadvertent." *Id.* 108 S.Ct. at 2468. While *Chilicky* involved the claims of plaintiffs who were denied social security benefits, it clearly implies that a scheme of federal employment regulation merits equal deference. Indeed, the Eighth Circuit's decision in *McIntosh,* 810 F.2d 1411, on which the plaintiff relies was reversed and remanded by the Court in view of its holding in *Chilicky. See Turner v. McIntosh,* — U.S. ——, 108 S.Ct. 2861, 101 L.Ed.2d 898 (1988). The Eighth Circuit has since reconsidered *McIntosh* in light of *Chilicky,* holding that because a particularized grievance process exists under the CSRA, and because the statute is otherwise silent as to damages, courts should not imply a *Bivens* action for federal employees affected by adverse personnel decisions. *McIntosh v. Turner,* 861 F.2d 524 (8th Cir.1988); *in accord Spagnola v. Mathis,* 859 F.2d 223 (D.C.Cir.1988) (per curiam). This is unambiguous teaching which the court must follow and therefore plaintiff's complaint will be dismissed for failure to state a claim for which relief can be granted, insofar as it alleges a cause of action under *Bivens.*

In sum, this court lacks the jurisdiction to review the administrative propriety of plaintiff's termination. Nor does the court have the ability to imply a cause of action for any of the wrongs plaintiff has allegedly suffered. The court appreciates the industry and diligence plaintiff has demonstrated in pursuing his claim *pro se* despite the sometimes complex nature of this area of the law, but it must nevertheless dismiss his complaint. Accordingly, it is

ORDERED that defendants' motion to dismiss is granted. Defendants' November 26, 1988 motion to substitute parties is consequently dismissed as moot.