**Margaret A. COYLE, Plaintiff,**

v.

**Kenneth L. ADELMAN, Defendant.**

**Civ. A. No. 85–1126.**

United States District Court,
District of Columbia.

Feb. 9, 1989.

Roy J. Bucholtz, Miller & Bucholtz, P.C., Reston, Va., for plaintiff.

Jay B. Stephens, U.S. Atty., John D. Bates, Linda A. Halpern, Asst. U.S. Attys., Washington, D.C., for defendant.

### MEMORANDUM OPINION

SPORKIN, District Judge.

This case is before me on defendant's renewed motion for summary judgment. After hearing several of plaintiff's witnesses (including the plaintiff herself), admitting into evidence a variety of exhibits and receiving a full and complete proffer of the remainder of plaintiff's case, I have determined that defendant's motion has merit. Accordingly, I am prepared to grant that motion.

Plaintiff has sought to litigate a variety of claims flowing from personnel decisions

made by her employer the U.S. Arms Control and Disarmament Agency ("ACDA") where she worked as a secretary.

Plaintiff, an employee of ACDA since its inception, claims that, for at least five years, she was without a position description, title, series or grade as required by the Civil Service Reform Act ("CSRA") and relevant Office of Personnel Management ("OPM") regulations.

Plaintiff alleges that she was carried as a GS–9 regardless of the duties she performed.

Plaintiff claims that beginning in October of 1981, she was performing GS–10 duties while in a GS–9 position and, accordingly, was entitled to the rank of GS–10.

Plaintiff complains that she did not receive equal pay for equal work.

Plaintiff alleges that an unlawful "over-complement" system existed at ACDA from approximately January 1979 until March 1985. Under this alleged system, whereby competitive service employees remained in unclassified positions without position descriptions or appropriate ranking, plaintiff complains she suffered harm.

Plaintiff complains that as a consequence of the foregoing she suffered, *inter alia*, loss of pay, loss of career advancement, loss of job training opportunities, and loss retirement benefits.

Plaintiff seeks relief in the form of back pay, a promotion to GS Level–10 and an end to illegal personnel practices.

There is no doubt that plaintiff, under merit system principles, is entitled to equal pay for equal work. Moreover, the "over-complement" system that has been alleged is at odds with Chief Judge Robinson's holding in *Crowley v. Kissinger*.[1] However, these facts alone cannot confer jurisdiction in this Court.

The question of jurisdiction has presented a vexing problem. This is a difficult case because of Chief Judge Robinson's strong language in *Crowley* and my own fervid belief that agencies of the government simply should not be permitted to engage in unlawful personnel practices.

Nevertheless, I am faced with—and obliged to follow—the holdings of the Supreme Court and our own Court of Appeals. A careful reading of *United States v. Fausto*, 484 U.S. 439, 108 S.Ct. 668, 98 L.Ed.2d 830 (1988), leads me to the inescapable conclusion that district courts no longer have jurisdiction over the type of case now before me. Justice Scalia's words could not be anymore certain nor his logic anymore persuasive or timely.

The Civil Service Reform Act of 1978 provides an exclusive remedy for civil servants complaining of injury resulting from personnel actions.[2] This court has been divested of jurisdiction to hear such claims. Thus, in this action the Court has no jurisdiction regardless of the jurisdictional provision plaintiff attempts to invoke.[3] To hold otherwise would "turn upside down" and "seriously undermine" the very principles enunciated in *Fausto*.[4] The exclusivity of the Civil Service Reform Act, in all but the most rare case,[5] is now beyond doubt.

Despite the ruling in *Fausto*, plaintiff has presented several arguments for why this Court does in fact have jurisdiction. For the reasons stated below, I find these arguments unpersuasive.

First, plaintiff argues that the wrongful acts taken against plaintiff were acts of omission and, therefore, not subject to review. Most notably, plaintiff suggests that a challenge to her classification was not possible because she never was given a

---

1. Civil Action No. 74–494 (D.D.C. June 24, 1977).

2. *See Fausto*, 108 S.Ct. at 671–73; *Barnhart v. Devine*, 771 F.2d 1515, 1519–22 (D.C.Cir.1985); *Carducci v. Regan*, 714 F.2d 171, 174–75 (D.C. Cir.1983).

3. *But see Spagnola v. Mathis*, 859 F.2d 223, 229 (D.C.Cir.1988) ("we do not suggest that the

CSRA precludes the exercise of federal jurisdiction over the constitutional claims of federal employees altogether").

4. *See Fausto*, 108 S.Ct. at 674.

5. *See Spagnola v. Mathis*, 859 F.2d at 229–30.

position description, title, series and grade to actually challenge.

This position is untenable. "Prohibited personnel practices," by definition, encompass the very situation described by plaintiff. The relevant statute specifically prohibits "tak[ing] or *fail[ing] to take* any action if the taking of or failure to take such action violates any law, rule or regulation implementing, or directly concerning, the merit system principles contained [herein]." 5 U.S.C. Sec. 2302(b)(11) (emphasis added).

Moreover, plaintiff's own witness, Ms. Hazel Mingo, former ACDA Personnel Officer, testified that a classification challenge could be effectively lodged with the Office of Personnel Management even if plaintiff had no position description. Ms. Mingo stated that, once an employee who was without a position description complained, OPM would require the agency to prepare a position description. Thereafter, the individual could renew the challenge.[6]

Second, plaintiff contends that the failure to provide her with a position description or appropriate classification meant that she was outside the Civil Service and, thereby, not covered by the CSRA remedial scheme. In effect, plaintiff would have this Court find that she was a type of *sui generis* employee not within the Civil Service. This simply cannot be the case.

During the entire period in question, plaintiff received pay as a member of the competitive service. Plaintiff paid money into the pension fund. Plaintiff made career decisions based on her desire to retain the benefits of her many years of government service. There can be no doubt that plaintiff was a member of the Civil Service.

Concededly, at times plaintiff's position was not appropriately described and at times she served without a position description. Obviously, every employee is entitled to a position description. However, I am not prepared to find that such an omission provides plaintiff with the ability to circum-

vent the CSRA and establish jurisdiction in this Court.

Moreover, plaintiff learned in 1980 that she was "overcomplement" and sat on her rights until the filing of this lawsuit. Dr. Manfred Eimer, plaintiff's supervisor, testified and plaintiff has admitted[7] that plaintiff was attempting to secure a position as a career GS–10. Plaintiff stated that her job "should be classified GS–10 but has never been officially established *due to my reluctance to accept a Schedule C* and ACDA's unwillingness to establish the job in the competitive service."[8] ACDA had a policy of requiring secretaries to Assistant Directors be Schedule C, not career, GS–10s. Plaintiff was attempting to establish herself as an exception to this policy.

It also should be noted that plaintiff did receive a position description in 1985. Plaintiff now claims that the position description is not to her liking.

I cannot find any reason to believe that these past missteps or present grievances resulted in plaintiff being beyond the reach of the CSRA or not a civil servant. Indeed, plaintiff refused to accept the Schedule C position because she did not want to jeopardize the benefits to which she was entitled as a career civil servant. Moreover, during the entire period at issue, plaintiff continued to draw salary and pay into her pension plan. In fact, if I were to accept plaintiff's argument, there is little doubt that she would be endangering those rights and benefits she has accrued during her many years in government.

Furthermore, the CSRA itself demonstrates that plaintiff was a civil servant. "Covered position" under the CSRA is defined as "any position in the competitive service." 5 U.S.C. Sec. 2302(a)(2)(B). "Competitive service" is defined as:

all civil service positions in the executive branch, except

(A) positions which are specifically excepted from the competitive service by or under statute;

---

6. *See, e.g., Barnhart v. Devine,* 771 F.2d at 1523.

7. Defendant's Exhibit 12.

8. *Id.* (emphasis added).

(B) positions to which appointments are made by nomination for confirmation by the Senate ...; and

(C) positions in the Senior Executive Service.

5 U.S.C. Sec. 2102(a). Again, there is simply no basis for finding that plaintiff was not a member of the Civil Service.

Finally, plaintiff has attempted to piggyback her claim of jurisdiction on allegations of a widespread "overcomplement" system in violation of *Crowley v. Kissinger.*[9] Neither four days of testimony nor plaintiff's proffers have established any nexus whatsoever between these broad allegations and any prejudice suffered by plaintiff.

Plaintiff has argued that ACDA used its research funds to pay competitive employees who did not have proper position descriptions. Despite plaintiff's proffer that this was an illegal practice, the General Accounting Office ("GAO") acknowledged and condoned this practice. The GAO report to the Director of ACDA, issued on September 30, 1983, states "[a]fter research funds are appropriated, they can be transferred to meet other needs."[10] Moreover, plaintiff has failed to demonstrate by testimony or proffer how this practice in any way worked to the detriment of plaintiff.

Plaintiff also claims that, under relevant OPM regulations and ACDA practices, once a Schedule C position is abandoned it automatically converts to a competitive position of an equivalent grade. This proposition is unacceptable. Indeed, if this position were correct or if I were to hold it to be correct, agencies could simply skirt the entire classification process by creating Schedule C positions and allowing them automatically to convert to career positions when the incumbent left the agency. This would do violence to the principles of a career system. Moreover, plaintiff again has failed to point to a single incident where this alleged practice resulted in prejudice to the plaintiff.

The only claim that even suggests a prejudicial effect to plaintiff involves her failure to obtain a GS–10 due to ACDA's policy of requiring all secretaries to Assistant Directors be Schedule C. However, Dr. Manfred Eimer has testified and plaintiff has admitted that plaintiff was offered and rejected a Schedule C / GS–10 position.[11] In rejecting such an offer, plaintiff was not prejudiced; she made a deliberate, reasoned choice. Moreover, plaintiff has failed to show any exception to ACDA's policy comparable to the one she sought. Indeed, it was plaintiff who first sought to carve out this exception to ACDA's general rule.

The "overcomplement" system alleged by plaintiff has not existed for some years and in no way has been shown to have adversely impacted upon plaintiff. Moreover, plaintiff seeks to enjoin practices that are unrelated to and have had no effect on this plaintiff. Since there is no class action before the court and plaintiff has failed to demonstrate why she has standing to challenge these alleged questionable practices, remedying them is beyond the scope of this litigation. Based on these circumstances, this simply is not a case where any form of injunctive relief would be appropriate.

Throughout the long history of this case, I have been concerned that an allegedly illegal "overcomplement" system has been allowed to exist at the Arms Control and Disarmament Agency. I have proceeded with painstaking care in determining how to address these allegations. I have now come to the conclusion that, even if I were prepared to find that the alleged practices were improper, this finding would have no effect on this Court's jurisdiction to hear plaintiff's unrelated grievances.

---

9. Civil Action No. 74–494. Presumably, although never satisfactorily argued or briefed, plaintiff's contention is that a violation of *Crowley* would fall within the extremely limited exception to *Fausto* suggested in *Spagnola.* *See Spagnola,* 859 F.2d at 229–30. Of course, this argument would most likely fail because plaintiff has failed to adequately articulate a constitutional claim.

10. Plaintiff's Exhibit 283 at 7.

11. *See* Defendant's Exhibit 12. If plaintiff seeks to challenge ACDA's policy of requiring that secretaries to Assistant Directors be Schedule C, clearly that challenge should be brought to the Office of Special Counsel.

The wisdom of Justice Scalia's opinion in *Fausto* has been born-out by this case. During the four days of testimony I have permitted, this Court has become inconceivably bogged down in the minutia of the civil service regulations. I, in effect, have been placed in the position of a classification clerk.

The Civil Service Reform Act clearly establishes the process to hear claims such as those presented by plaintiff. If plaintiff is able to carve out a Northwest Passage around the CSRA, I shudder to think of what will happen to the federal judiciary. It will become so bogged down with hearing employee grievances that federal judges will have little time to do anything else.

The point is I simply do not think it is appropriate or necessary for this Court to allocate its scarce resources to spend three weeks to determine whether plaintiff should be a GS–9 or a GS–10. In reality, that is the principle issue before me. Absent a legitimate constitutional challenge, which does not exist here, determining this issue is not the work of this Court. It is not in my position description. It is for the Office of Personnel Management or the Office of Special Counsel, pursuant to the CSRA, to deal with problems of this kind.[12] This was the principle clearly enunciated by Justice Scalia in the *Fausto* decision.

One final issue needs to be addressed. Plaintiff complains about being required to take annual leave for time-off from work to pursue this case. I do not believe this claim involves an attempt to interfere with the processes of this Court. Plaintiff, therefore, must grieve this matter with her agency if she still desires to pursue it.

Based on the forgoing, I am granting defendant's renewed motion for summary judgment. Accordingly, this case is dismissed.

---

**12.** *See Carducci v. Regan,* 714 F.2d 171 (D.C.Cir. 1983).