**Michael E. HUBBARD, Plaintiff,**

v.

**ADMINISTRATOR, ENVIRONMENTAL PROTECTION AGENCY, Defendant.**

Civ. A. No. 83–564.

United States District Court, District of Columbia.

April 30, 1990.

Peter B. Broida, Passman and Broida, Washington, D.C., for plaintiff.

Sharon A. Cohen, Asst. U.S. Atty., Washington, D.C., for defendant.

## OPINION

JUNE L. GREEN, District Judge.

The plaintiff, Michael E. Hubbard, seeks injunctive relief against the Environmental Protection Agency ("EPA") in connection with the EPA's decision not to hire Hubbard as a criminal investigator. Plaintiff alleges that the decision not to hire was based impermissibly on his exercise of his first amendment right of free speech. The Court of Appeals affirmed in part and reversed in part this Court's initial decision on summary judgment. *Hubbard v. U.S. E.P.A. Admin.*, 809 F.2d 1 (1986), *aff'd on reh'g en banc, Spagnola v. Mathis*, 859 F.2d 223 (D.C.Cir.1988) (sole issue on rehearing the denial of a separate *Bivens* remedy). Following the remand, the remaining claims were tried to the Court on May 3 and 4, 1989. Having considered the testimony, the pleadings submitted in support of the parties' positions, and the entire record in this case, the Court finds for the plaintiff.

## I. *Statement of Facts*

An extensive discussion of the background of this case can be found in this Court's earlier opinion granting summary judgment. *See Hubbard v. U.S. E.P.A. Admin.*, No. C.A. 83–564 (D.D.C. Dec. 20, 1984) (Summary Judgment Opinion). Briefly, the Court notes that Hubbard's application was assigned a numerical rank considered among the "best qualified." By letter dated August 26, 1982, Hubbard was notified that he was considered by EPA personnel specialists to be highly qualified for the criminal investigator job opening. Hubbard's name was placed on a certificate of eligibles to be interviewed by a three-person panel.

Hubbard was interviewed by the selecting official for the positions, Mr. Peter Beeson, and two of Beeson's subordinates, William Graff and Gary Steakley. Prior to the interview, Beeson had been alerted to Hubbard's possible role in the public disclosure of information relating to the Metropolitan Police Department's Capitol Hill drug investigation. Hubbard offered the name of David Hopkins, an attorney with the Department of Justice, as a reference regarding his qualifications and his role in the Capitol Hill investigation. Hopkins subsequently confirmed that Hubbard had been removed from the Capitol Hill investigation as a result of his disclosure of information to Congressman Robert Dornan and representatives of reporter Jack Anderson's office.

Because Hubbard had veteran's preference status, Beeson was required to prepare a "passover" document to justify selection of any applicant with a lower ranking than Hubbard on the certificate of eligibles. The passover document finally submitted to the EPA Personnel Office indicated that Hubbard was not selected because he lacked the requisite white collar or corporate investigative experience. However, Hubbard had some white collar experience through training and school and, furthermore, had extensive experience in class I felony investigations. This experience satisfied the criteria listed in the Vacancy Announcement. *See* Joint Exhibit 1 (position requires skill in conducting investigations involving major corporations, white collar crime, and fraud). Moreover, several of the successful applicants had less white collar or corporate experience than Hubbard.

The Court finds that the real reason Beeson decided not to hire Hubbard was his belief that Hubbard was responsible for press leaks which compromised the Capitol Hill investigation. The Court is troubled by the fact that officials at EPA were not straightforward with their true reasons for passing over Hubbard. Their attempts to conceal the truth, and the assertion of a patently inadequate basis for rejecting Hubbard, buttress the Court's conclusion that EPA's actions regarding Hubbard's application were constitutionally suspect.

## II. *Conclusions of Law*

### A. Liability for a Constitutional Violation

Although plaintiff is merely an applicant for government employment, the Supreme Court's decision in *Perry v. Sindermann* requires that this Court examine his allegations with care:

[E]ven though a person has no "right" to a valuable governmental benefit and even though the government may deny him the benefit for any number of reasons, there are some reasons upon which the government may not rely. It may not deny a benefit to a person on a basis that infringes his constitutionally protected interests—especially his interest in freedom of speech. For if the government could deny a benefit to a person because of his constitutionally protected speech or associations, his exercise of those freedoms would in effect be penalized and prohibited. This would allow the government to "produce a result which [it] could not command directly." *Speiser v. Randall,* 357 U.S. 513, 526 [78 S.Ct. 1332, 1342, 2 L.Ed.2d 1460] [ (1958) ]. Such interference with constitutional rights is impermissible.

*Perry v. Sindermann,* 408 U.S. 593, 597, 92 S.Ct. 2694, 2697, 33 L.Ed.2d 570 (1972).

Plaintiff alleges that the adverse employment decision in this case was based impermissibly on his exercise of his first amendment rights. In the context of government employment[1], the Supreme Court has recognized that the exercise of a public employee's first amendment rights must be weighed against the government's interest, as an employer, in the efficiency of the public services it performs through its employees. *See Pickering v. Board of Education,* 391 U.S. 563, 568, 88 S.Ct. 1731, 1734, 20 L.Ed.2d 811 (1968). The Court is aided in performing this difficult balance by significant precedent, both from the Supreme Court and this circuit. *See, e.g., Hall v. Ford,* 856 F.2d 255 (D.C.Cir.1988); *A.P.W.U. v. U.S. Postal Service,* 830 F.2d 294 (D.C.Cir.1987).

■ The first inquiry is whether the public employee was speaking on a matter of public concern. This is a threshold question, to be considered before the court attempts the delicate balance required by *Pickering. Rankin v. McPherson,* 483 U.S. 378, 384, 107 S.Ct. 2891, 2896, 97 L.Ed.2d 315 (1987) (speech expressing dislike for the President and his policies); *Connick v. Meyers,* 461 U.S. 138, 146, 103 S.Ct. 1684, 1689, 75 L.Ed.2d 708 (1983) (question whether assistant district attorneys felt pressured to work in political campaigns). Certainly, the allegation that members of Congress use illegal narcotics is a matter of public concern. Other courts have found matters of much less import to meet this threshold. *See, e.g., Hall v. Ford,* 856 F.2d 255 (D.C.Cir.1988) (speech regarding a public university's alleged violation of NCAA athletic rules); *Luethje v. Peavine School District of Adair Co.,* 872 F.2d 352 (10th Cir.1989) (complaints by school employee about unsanitary practices in school cafeteria).

Once satisfied that the employee's speech addresses a matter of public concern, the court must proceed to the *Pickering* balancing test. The first amendment places a high value on speech concerning public affairs. Against this important value the government has the burden of producing evidence of its countervailing interest. *See Tygrett v. Washington,* 543 F.2d 840, 849 (D.D.C.1974) (government bore burden to show that discharged probationary police officer's statements detrimentally affected efficiency).

■ The ability to maintain the confidentiality of a sensitive investigation does appear to the Court to be a valid consideration in hiring a criminal investigator. However, the government in this case failed to demonstrate that Hubbard, by virtue of his prior contacts with the press, could not perform the job of criminal investigator with the EPA successfully. *See Rankin,* 483 U.S. at 388–89, 107 S.Ct. at 2898–99 (no showing that employee's statement that she hoped a future assassin succeed, in the

---

1. The Court notes that most of the Supreme Court cases it discusses deal with discriminatory firing, not failures to hire as in the case at bar. However, in *Perry* the Court specifically noted that the lack of a contractual or tenure "right" to re-employment was immaterial to the free

speech claim. *Id.* at 597–98, 92 S.Ct. at 2697–98. *See also, Scott v. Macy,* 349 F.2d 182, 183 (1965) (the Constitution does not distinguish between applicants and employees, both are entitled to equal protection against arbitrary or discriminatory treatment by the government).

context of speech critical of President's policies, interfered with the functioning of the Constable's office); *A.P.W.U. v. U.S. Postal Service*, 830 F.2d 294, 303 (D.C.Cir.1987) (no evidence that postal worker's speech caused concrete harm to government's interest in maintaining public confidence in the confidentiality of the mail). Nor did the government attempt to show that it had an interest in discipline or morale in the workplace which would be irreparably compromised by Hubbard's presence. *See Connick*, 461 U.S. at 146–48, 103 S.Ct. at 1689–91 (Court deferred to employer's judgment that plaintiff's actions caused a "mini-insurrection" interfering with working relationships); *Hughes v. Whitmer*, 714 F.2d 1407 (8th Cir.1983) (state trooper's transfer upheld where need to maintain morale outweighed plaintiff's dissention-causing, speech-related activities), *cert. denied*, 465 U.S. 1023, 104 S.Ct. 1275, 79 L.Ed.2d 680 (1984).

▪ Third, the employee must prove that his speech was a substantial or motivating factor in his discharge. *Mount Healthy City Bd. of Educ. v. Doyle*, 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977). The record reflects that Hubbard's qualifications were equal to or exceeded those of lower-ranked candidates ultimately hired for the positions. Hubbard was not offered a position despite the recommendation of Steakley, shared by Graff, that he be hired. In light of this evidence, the Court concludes that were it not for Hubbard's speech regarding the Capitol Hill investigation, he would have been hired as a criminal investigator by the EPA.

▪ Finally, the government employer must be given an opportunity to show by a preponderance of the evidence that it would have reached the same decision even absent the protected conduct. *Id.* EPA asserts that it had a legitimate reason not to hire Hubbard, because his unauthorized and insubordinate actions in speaking with the press showed poor judgment that could not be tolerated in the sensitive investigations the new hires would be conducting. The fact that this reason was not given to Mr. Hubbard, nor was it reflected on the passover document prepared within days of the decision to reject him, undermines the Court's confidence in the truth of this asserted motivation. The Court finds that this assertion was neither the primary nor a substantial factor in rejecting Hubbard.

Moreover, the Court finds that Hubbard's communications regarding the investigation were not insubordinate and undeserving of first amendment protection. Hubbard was removed from the case after the publicity broke, but ultimately, was neither reassigned nor demoted. It was the considered judgment of his superiors in the police department that Hubbard did not act inappropriately in his communications regarding the investigation. The Court finds the decision of the police department not to discipline Hubbard to be evidence that Hubbard's judgment was not so deficient as to provide a non-discriminatory and legitimate basis for failing to hire him for the position for which he was otherwise well qualified.

The government has not shown that Hubbard's alleged rash judgment actually presented such a threat to the integrity or confidentiality of an investigation that he was not qualified for the position. There is a failure of proof on this issue because the selecting officials simply did not investigate Hubbard's record thoroughly enough. Where the reason for rejecting an applicant is so inextricably bound up with his exercise of the constitutional right to free speech, it is imperative that the government tread carefully to avoid impermissibly censuring or chilling this fundamental right. Because the government failed to rebut the plaintiff's showing that he was not hired based on the exercise of his first amendment right to free speech, the plaintiff prevails.

B. The Remedy for the Constitutional Violation

▪ Because the Court finds today that Hubbard's first amendment rights were violated by the EPA's decision not to hire him, he is entitled to a remedy. The rule in this circuit is that civil servants may seek equitable relief against their supervisors,

and the agency itself, in vindication of their constitutional rights. *Spagnola*, 859 F.2d at 229–30. The scope of injunctive relief must be no wider than necessary to remedy the constitutional violation. The Court, therefore, orders that plaintiff be offered employment with EPA as a criminal investigator, provided he still meets reasonable mental and physical qualifications for the job[2]. If no position is immediately available, and plaintiff still wishes to accept employment with EPA, then plaintiff shall be instated in the next available position.

■■■ Plaintiff is also entitled to damages incident to this equitable relief. An award of back pay is appropriate to restore the plaintiff, as nearly as possible, to the economic position he would have been in, absent the prohibited discrimination. *See Gurmankin v. Costanzo*, 626 F.2d 1115 (3d Cir.1980) (back pay the norm, to make whole the victims of illegal discrimination), *cert. denied*, 450 U.S. 923, 101 S.Ct. 1375, 67 L.Ed.2d 352 (1981). The Court finds that its denial of back pay under the Back Pay Act, 5 U.S.C. § 5596 (1982), was not appealed. *See Hubbard*, 809 F.2d at 4 n. 5. Therefore, no back pay will be awarded under this statute. However, Hubbard is entitled, upon submission of appropriate proof, to recover the difference between what he actually earned, or should have earned through comparable employment, and the salary and grade progressions earned by the criminal investigators hired by the EPA. This amount shall be calculated from the date the first investigator was hired in 1982, through the date of Hubbard's instatement.[3] Furthermore, if EPA cannot instate plaintiff within 60 days of this opinion and order, then EPA shall be liable for front pay until the time of Hubbard's instatement.

■■■ The Court further finds that the reason for failing to hire Hubbard asserted in the passover document prepared by Mr. Beeson was untrue. Hubbard had as much or more white collar and corporate investigative experience as many of the successful applicants. Statements that he lacked such experience are inaccurate, and shall be purged from his records. *See Chastain v. Kelley*, 510 F.2d 1232, 1236 (D.C.Cir. 1975) (expungement of records an appropriate equitable remedy to vindicate rights secured by the constitution).

■■■ Plaintiff requests an award of attorneys fees and costs. However, as a general rule, the sovereign's immunity and the American Rule preclude assessment of attorney's fees against the United States. *See Grace v. Burger*, 763 F.2d 457, 460 (D.C.Cir.) (denying attorney's fees to party which successfully challenged enforcement of federal statute on first amendment grounds), *cert. denied*, 474 U.S. 1026, 106 S.Ct. 583, 88 L.Ed.2d 565 (1985). Hubbard is not entitled to attorney's fees and costs under the Equal Access to Justice Act, 28 U.S.C. § 2412(b) (1982). *See Unification Church v. I.N.S.*, 762 F.2d 1077 (D.C.Cir. 1985) (language of the Equal Access to Justice Act is to be construed narrowly; federal government may be liable in circumstances analogous to state governments' liability only if it actually violates one of the statutes under 42 U.S.C. sec. 1988); *Premachandra v. Mitts*, 753 F.2d 635, 641 (8th Cir.1985) (Congress could have clearly made the United States liable for fees in constitutional deprivation actions but chose not to do so).

The parties shall meet to discuss and attempt to agree upon the outstanding remedial issues: the amount, if any, of back and front pay due Hubbard and the place and effective date of Hubbard's employment with EPA. The parties shall notify the Court if no agreement is reached within 60 days of the date of this order.

### III. *Conclusion*

The Court only reluctantly assesses this judgment against the United States. As explained in its earlier opinion in this mat-

---

**2.** Despite language in the Court of Appeals' decision that reinstatement is among the remedies available to Hubbard, *see* 809 F.2d at 11, the Court notes that plaintiff cannot be "reinstated" in a position in which he was never "instated."

**3.** Should plaintiff decline employment, or should the government show he is no longer qualified for the position, damages shall be reduced accordingly.

ter, the Court does not find the federal courts an appropriate forum in which to second-guess the countless personnel decisions affecting government employees. *See Hubbard*, Summary Judgment Opinion at 12–16. However, because of the importance of the first amendment interests at stake, the Court finds no other result would be just.

## ORDER

This matter is before the Court on plaintiff Michael E. Hubbard's complaint for equitable relief. Hubbard claims that the decision of the Environmental Protection Agency ("EPA") not to hire Hubbard as a criminal investigator was based impermissibly on his exercise of his constitutional right of free speech. A trial to the Court was held on May 3 and 4, 1989. Upon consideration of oral argument and sworn testimony received at trial; the pleadings submitted in support of the parties' positions; the instruction of the Court of Appeals in ordering remand on the constitutional issue; and the entire record in this case, and for the reasons set forth in the accompanying memorandum, it is by the Court this 30th day of April 1990,

ORDERED that plaintiff's request for equitable relief is granted; it is further

ORDERED that the EPA shall instate Hubbard in a position as criminal investigator within 60 days of this order, provided Hubbard still meets reasonable mental and physical qualifications for the job and still desires such employment; it is further

ORDERED that Hubbard shall be instated at the same compensation level currently earned by those investigators hired by the EPA in 1982; it is further

ORDERED that upon Hubbard's submission of appropriate proof of loss, he shall be awarded back pay equal to the amount he would have earned as a criminal investigator with EPA. This amount shall be calculated from the date the first investigator was hired in 1982 through the date of this opinion, minus the mitigating amount Hubbard earned or reasonably should have earned through comparable employment. If Hubbard is not instated within 60 days

of this order, then EPA shall also be liable for front pay until the date of his instatement; it is further

ORDERED that all government records which assert Hubbard was not qualified for the position because he lacked white collar or corporate investigative experience shall be destroyed or corrected to reflect Hubbard's possession of the requisite experience; it is further

ORDERED that Hubbard's claim for attorney's fees and costs is denied; it is further

ORDERED that the parties meet to discuss and attempt to agree upon the outstanding remedial issues: the amount, if any, of back and front pay due Hubbard and the place and effective date of Hubbard's employment with EPA. The parties shall notify the Court if no agreement is reached within 60 days of the date of this order. It is further

ORDERED that this case is dismissed.