**Michael E. HUBBARD, Plaintiff,**

v.

**ADMINISTRATOR, ENVIRONMENTAL PROTECTION AGENCY, Defendant.**

**Civ. A. No. 83–564.**

United States District Court, District of Columbia.

June 27, 1990.

Peter B. Broida, Passman and Broida, Arlington, Va., for plaintiff.

Sharon A. Cohen, Asst. U.S. Atty., Washington, D.C., for defendant.

JUNE L. GREEN, District Judge.

### MEMORANDUM

This matter is before the Court on cross motions to alter or amend the Court's April 30, 1990 Judgment. 735 F.Supp. 435. In its April opinion and order, the court granted plaintiff Michael E. Hubbard's complaint for equitable relief, ordering that he be instated in a position as a criminal investigator at the Environmental Protection Agency ("EPA"). The Court also held that Hubbard was entitled, upon appropriate proof of loss, to an award of back pay equal to the amount he would have earned had he had not been denied the position at EPA on constitutionally impermissible grounds. Upon consideration of the motions to alter or amend the judgment, the Court finds the government's objection to the award of backpay to be well-taken. As explained below, the doctrine of sovereign immunity precludes the award of damages in these circumstances. Therefore, defen-

dant's motion to alter or amend is granted insofar as it requests that the award of backpay be stricken. Defendant's motion regarding liability for the constitutional violation is denied. Plaintiff's motion to alter or amend is denied in its entirety.

*Discussion*

A. *Backpay as an Award of Damages Against the United States*

■ Absent a statutory waiver, the United States as a sovereign is immune from suit. The Administrative Procedure Act provides such a waiver for:

> [a]n action in a court of the United States *seeking relief other than money damages* and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority ...

5 U.S.C. § 702 (1982) (emphasis added). This section provides the basis for the Court's equitable order that EPA instate Hubbard in a position as a criminal investigator at EPA. Hubbard's additional claim for backpay presents the question whether backpay should be considered "relief other than money damages" within the meaning of this provision. If it is not, then Hubbard's claim must fail, for the Court has previously ruled that he is not entitled to recovery under the Back Pay Act, 5 U.S.C. § 5596 (1982). *See Hubbard v. U.S. E.P.A. Admin.,* 809 F.2d 1, 4 n. 5 (1986) (noting plaintiff's failure to appeal this ruling), *aff'd on reh'g en banc, Spagnola v. Mathis,* 859 F.2d 223 (D.C.Cir.1988).

The parties' submissions on this complex issue of sovereign immunity are quite sparse. The Court's own research shows that this issue is far from clear. However, upon reconsideration, the Court concludes that a claim for backpay in these circumstances is essentially a claim for compensatory money damages. As such, it exceeds the limited waiver of statutory immunity found in Section 702.

In a recent Supreme Court case construing Section 702, the state of Massachusetts sued the Department of Health and Human Services ("HHS") over its refusal to reimburse the state under the Medicaid program for certain state services to mentally retarded persons. *See Bowen v. Massachusetts,* 487 U.S. 879, 108 S.Ct. 2722, 101 L.Ed.2d 749 (1988). In its opinion, the Court quoted extensively from a decision by this circuit, *Maryland Department of Human Resources v. HHS,* 763 F.2d 1441 (D.C.Cir.1985). The Supreme Court found Massachusetts' claim similar to Maryland's, which sought "funds to which a statute allegedly entitles it, rather than money in compensation for the losses, whatever they may be, that Maryland will suffer or has suffered by virtue of the withholding of those funds." 487 U.S. at 895, 108 S.Ct. at 2732. The fact that the states' claims were for recovery of money does not transform the nature of the relief sought—specific relief—to relief in the form of damages. *See id.*

■ In contrast, Hubbard's request for specific relief—instatement—has been granted. The Court is without authority under section 702 to order further relief. Hubbard is not *entitled* to the retroactive benefits of a position to which he has never been instated. The established rule is that one is not entitled to the benefit of a position until he has been duly appointed to it. *United States v. Testan,* 424 U.S. 392, 402, 96 S.Ct. 948, 955, 47 L.Ed.2d 114 (1976) (quoting *United States v. McLean,* 95 U.S. 750, 24 L.Ed. 579 (1878); *Ganse v. United States,* 180 Ct.Cl. 183, 186, 376 F.2d 900, 902 (1967)). In *Testan,* civil servants who had been classified at too low a grade level were denied back pay and retroactive reclassification. The Court characterized their claim as one for the benefit of positions to which they should have been, but were not, appointed. 424 U.S. at 402, 96 S.Ct. at 955. Citing *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), the Court noted that there was a difference between prospective reclassification, on the one hand, and retroactive reclassification resulting in money damages, on the other. *Testan* at 403, 96 S.Ct. at 955. The Court also noted that if the plaintiffs were correct in their claims for retroactive relief and money damages, many federal statutes—such as the Back Pay

Act—that expressly provide money damages against the United States in limited circumstances would be rendered superfluous. *Id.* at 404, 96 S.Ct. at 956. This Court agrees. Plaintiff's claim for backpay as part of the Court's order of equitable relief is denied.

## B. *The Pickering Balance and the Constitutional Violation*

■ There is no merit to defendant's suggestion that the Court has made an error of law in its application of the balancing test set forth by the Supreme Court in *Pickering v. Board of Education,* 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). Defendant suggests that the Court failed to consider the "content, form, and context of a given statement, as revealed by the whole record." *See Connick v. Meyers,* 461 U.S. 138, 147, 103 S.Ct. 1684, 1690, 75 L.Ed.2d 708 (1983). The defendant argues that the time, place, manner and surrounding context of Hubbard's communication warrant a finding that his speech was not about a matter of public concern and, thus, was not protected by the first amendment.

To the contrary, the Court had considered the context of Hubbard's speech in arriving at its decision. The context of Hubbard's speech supports the Court's earlier findings. The intelligence which sparked the entire investigation of drug use on Capitol Hill came from Jack Mitchell and Indy Badwahr, reporters working with columnist Jack Anderson. And it was United States Representative Robert K. Dornan who authorized the use of his office and telephone number as a front for Hubbard's undercover work on Capitol Hill. Conducting an investigation with the aid of persons outside the police organization carries a certain amount of risk of unauthorized or premature disclosure. It appears to the Court that in authorizing this investigation, the Metropolitan Police Department made a judgment that the benefits of cooperation in this case outweighed this risk. In light of these circumstances, it is clear to the Court that Hubbard's initial contacts with the press and Representative Dornan were authorized, and deserving of first amendment protection.

Defendant focuses on the four-page handwritten memorandum to Representative Dornan as an example of the sort of speech not protected by the first amendment. Hubbard may have been indiscrete in providing the memorandum to Dornan. However, Hubbard's decision to meet with Dornan must be viewed in the context of Dornan's cooperation and participation in the investigation by allowing his office to be used in the undercover operation. Dornan was also a member of the House Select Committee on Narcotics Abuse and Control. In light of these circumstances, it was not completely inappropriate for Detective Hubbard to brief Representative Dornan, a member of a coordinate branch of government, on the results of his investigation.

The Metropolitan Police Department ("MPD") initiated disciplinary proceedings after information about the investigation was leaked to the press. However, when Police Chief Turner heard the full story, including the context in which Dornan and Anderson's staff had provided assistance to Detective Hubbard, he ordered the disciplinary action against Hubbard rescinded. The Court found that the MPD's rescission of disciplinary proceedings was evidence that Hubbard's actions did not merit discipline, nor, as happened in this case, passover for the position at EPA.

Against this background, the Court concluded that the selecting official at EPA made the decision not to hire Hubbard on an impermissible basis—Hubbard's exercise of his first amendment right of free speech. The Court went on to make a factual finding that, under the *Pickering* balancing test, the government's proffered interests did not outweigh Hubbard's significant interest in freedom of speech. The parties have pointed to no new facts or law which warrant disturbing this finding.

## Conclusion

For the reasons discussed above, the Court reaffirms its April 30, 1990 Judgment which found that defendant violated

Hubbard's constitutional rights by basing the decision not to hire him on his exercise of the right to free speech. Hubbard is entitled to be instated as a criminal investigator at EPA, at a grade and pay scale equal to that of persons hired in 1982. Hubbard's records are to be corrected, to reflect that he possessed the requisite qualifications for the position. Absent a waiver, claims for money damages against the United States are barred by the doctrine of sovereign immunity. As explained in earlier opinions, Hubbard's case does not qualify for any of the statutory exceptions to this rule of immunity. Hubbard's claim for backpay, therefore, is denied. The remaining requests made in the cross-motions to alter or amend are denied.