# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

| | |
|---|---|
| SPECIAL COUNSEL<br>EX REL. VINCENT CEFALU,<br>   Petitioner,<br><br>   v.<br><br>DEPARTMENT OF JUSTICE,<br>   Agency. | DOCKET NUMBER<br>CB-1214-13-0187-T-1<br><br><br>DATE: September 8, 2014 |

Bruce D. Fong, Esquire, and Elisabeth R. Brown, Esquire, Oakland, California, Carolyn N. Lerner, Esquire, Washington, D.C., and Zahra Karinshak, Esquire, Atlanta, Georgia, for the petitioner.

Andrew M. Dunnaville and Katherine Meng, Washington, D.C., for the agency.

## BEFORE

Susan Tsui Grundmann, Chairman
Anne M. Wagner, Vice Chairman
Mark A. Robbins, Member

Vice Chairman Wagner has recused herself from this case.
Chairman Grundmann issues a separate opinion.
Member Robbins issues a separate opinion.

## ORDER

¶1   This matter is before the Board based on the administrative law judge's (ALJ) order certifying an interlocutory appeal of his determination that, for purposes of a prohibited personnel practice (PPP) under 5 U.S.C. § 2302(b)(12), the First Amendment constitutes a "law, rule, or regulation implementing, or directly concerning the merit system principles [contained in 5 U.S.C. § 2301]." The two Board members who are considering this case cannot agree on the

disposition of the issue certified to the Board and therefore issue separate opinions on that issue.[1] However, the two Board members do agree with the ALJ's determination that the Board has jurisdiction over this matter, but for a different reason than the one provided by the ALJ. As a result, we MODIFY the ALJ's determination as to the jurisdictional question. This matter is now being RETURNED to the ALJ for further adjudication consistent with this decision.

## BACKGROUND

¶2 The Office of Special Counsel (OSC) filed a complaint for corrective action in which it asserted that the Department of Justice (the agency) committed a PPP under 5 U.S.C. § 2302(b)(12) by violating Vincent Cefalu's rights under the First Amendment to the U.S. Constitution when it removed him from his Criminal Investigator position. As noted above, this matter came before the Board based on the ALJ's order certifying an interlocutory appeal of his determination that, for purposes of a PPP under 5 U.S.C. § 2302(b)(12), the First Amendment constitutes a "law, rule, or regulation implementing, or directly concerning the merit system principles [contained in 5 U.S.C. § 2301]."

¶3 On October 5, 2012, the agency issued a decision to remove Cefalu from his Criminal Investigator position based on a charge of lack of candor, stemming from his subpoenaed testimony during a criminal suppression hearing. Complaint File (CF), Tab 7 at 5, 7-8 (Joint Stipulation of Facts).[2] OSC filed a complaint for

---

[1] Therefore, this decision shall not be considered as precedent by the Board in any other case. 5 C.F.R. § 1200.3(d).

[2] The removal was to be effective October 9, 2012, but OSC filed a request for a stay, which was granted, effective October 23, 2012. CF, Tab 7 at 6; *see Special Counsel ex rel. Vincent Cefalu v. Department of Justice*, MSPB Docket No. CB-1208-13-0006-U-1, Stay Order (Oct. 23, 2012). The stay was extended while OSC investigated and sought corrective action by the agency, and then, after OSC filed its complaint with the Board, indefinitely extended until such time as the Board issues a decision on the pending complaint for corrective action or otherwise terminates the stay. *See Special Counsel ex rel. Vincent Cefalu v. Department of Justice*, MSPB Docket Nos. CB-1208-13-0006-U-5, Stay Order (June 3, 2013), CB-1208-13-0006-U-7, Stay Order (July 16, 2013).

corrective action against the agency, pursuant to 5 U.S.C. § 1214(b)(1)(A), (b)(2)(C), alleging that the agency's decision to remove Cefalu violated his First Amendment right to free speech and constituted a PPP under 5 U.S.C. § 2302(b)(12). CF, Tab 1. The agency filed an answer in which it asserted as its first affirmative defense that OSC did not have jurisdiction over the matter because the First Amendment did not constitute a "law, rule, or regulation implementing or directly concerning[] the merit system principles." CF, Tab 4 at 4. The parties submitted a Joint Stipulation of Facts. CF, Tab 7. The ALJ noted that there was an issue regarding the Board's jurisdiction, he directed the parties to file briefs regarding the jurisdictional issue, and the parties filed responsive briefs. *See* CF, Tabs 6, 8-9.

¶4     In his Order Concerning Jurisdiction, the ALJ rejected the agency's first affirmative defense, concluded that the First Amendment constitutes a "law, rule[,] or regulation implementing or directly concerning the merit system principles," and found that the Board has jurisdiction over this matter. CF, Tab 10 at 12. The ALJ indicated that he found persuasive the "implicit acknowledgments by the Board of such jurisdiction," coupled with the legislative history of the Civil Service Reform Act of 1978 (CSRA) and subsequent interpretations of that history and the CSRA's scope by various federal circuit courts. *Id.* Although the ALJ concluded that the Board has jurisdiction over this matter, he specifically noted in his order that OSC would ultimately be required to prove its case following further development of the record and adjudication. *Id.*

¶5     The agency filed a Motion for Certification of Interlocutory Appeal, OSC filed a response in which it only agreed with the agency that this issue satisfied the requirements for certification, and the ALJ certified the issue for interlocutory review. *See* CF, Tabs 11-13. We agree that the issue presented satisfies the criteria for certification of interlocutory appeal. 5 C.F.R. § 1201.92.

**ANALYSIS**

The Board has jurisdiction over this matter.

¶6      Pursuant to 5 U.S.C. § 1214(b)(2)(B), if OSC determines, in connection with any investigation, that there are "reasonable grounds to believe that a [PPP] has occurred, exists, or is to be taken which requires corrective action," it shall report the determination together with any findings or recommendations to the Board, the agency involved, and the Office of Personnel Management (OPM). If, after a reasonable period of time, the agency does not act to correct the PPP, OSC may petition the Board for corrective action. 5 U.S.C. § 1214(b)(2)(C). With exceptions not applicable here,[3] the Board shall order corrective action if it determines that OSC has demonstrated that such a PPP has occurred, exists, or is to be taken. 5 U.S.C. § 1214(b)(4)(A).

¶7      In its complaint, OSC asserted that the agency's decision to remove Cefalu based on speech protected by the First Amendment constituted a PPP under 5 U.S.C. § 2302(b)(12). CF, Tab 1 at 5-6. Section 2302(b)(12) states that a PPP occurs when an authorized employee "take[s] or fail[s] to take any other personnel action if the taking of or failure to take such action violates any law, rule, or regulation implementing, or directly concerning, the merit system principles contained in [5 U.S.C. § 2301]." OSC contends that the First Amendment is a law that implements the merit system principle found at 5 U.S.C. § 2301(b)(2), which states, in relevant part, that "[a]ll employees … should receive fair and equitable treatment in all aspects of personnel management … with proper regard for their privacy and constitutional rights." CF, Tab 1 at 11.

¶8      We disagree with the ALJ's apparent conclusion that the issue that he decided constitutes a jurisdictional issue. *See* CF, Tab 10 at 1 ("I find that the Board does have jurisdiction and therefore the case should proceed to a resolution

---

[3] The Board shall order corrective action, as described in 5 U.S.C. § 1214(b)(4)(B), in cases involving an alleged PPP as described in 5 U.S.C. § 2302(b)(8) or 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D).

on the merits."). Rather, the Board has jurisdiction over this matter because OSC filed a complaint for corrective action, which it is authorized to do pursuant to 5 U.S.C. § 1214. *See, e.g.*, *Hugenberg v. Department of Commerce*, 120 M.S.P.R. 381, ¶ 25 (2013) (stating that the Board has jurisdiction to consider allegations of a PPP under section 2302(b)(12) in the context of an OSC corrective action proceeding).

¶9 Chairman Grundmann and Member Robbins issue separate decisions on the matter of whether the First Amendment is a law, rule, or regulation directly concerning the merit system principles contained in 5 U.S.C. § 2301.

## ORDER

¶10 For the reasons set forth above, we MODIFY the ALJ's determination as to the jurisdictional question. This matter is now being RETURNED to the ALJ for further adjudication consistent with this decision.

FOR THE BOARD:                              _____
                                            William D. Spencer
                                            Clerk of the Board

Washington, D.C.

<u>The First Amendment is a law, rule, or regulation directly concerning the merit system principles contained in 5 U.S.C. § 2301.</u>

¶1       The agency argued that the First Amendment is not a law, rule, or regulation implementing or directly concerning the merit system principles. Complaint File (CF), Tab 9.  In support of this argument, the agency asserted that:  (1) the Board has held that the merit system principles are not self-executing; (2) the legislative history of 5 U.S.C. § 2302(b)(12) states that the merit system principles may not be a basis of legal action; and (3) the U.S. Court of Appeals for the Federal Circuit (Federal Circuit) has recognized that constitutional violations do not automatically give rise to prohibited personnel practices (PPPs) under 5 U.S.C. § 2302(b)(12).  CF, Tab 9 at 8-17.

¶2       In support of its position that the First Amendment is a law that implements or directly concerns the merit system principles, the Office of Special Counsel (OSC) asserted that:  (1) Congress intended for OSC to have jurisdiction over unconstitutional personnel actions, and most federal circuit courts have applied this intent to foreclose constitutional damages claims by federal employees; (2) OSC has prevailed in two prior cases involving allegations that the agency's decision to take action against an employee in violation of his First Amendment rights constituted a PPP; (3) the agency has relied on OSC's jurisdiction over unconstitutional personnel actions in arguing against employees' constitutional claims filed in district courts; and (4) the agency's reliance on the Board's prior cases is entitled to little weight because those cases arose in the context of a request for regulation review.  CF, Tab 8.

¶3      I first must determine, by using "traditional tools of statutory construction," if "Congress had an intention on the precise question at issue, [and, if so,] that intention is the law and must be given effect." *Chevron U.S.A., Inc. v. National Resources Defense Council, Inc.*, 467 U.S. 837, 843 n.9 (1984); *see Delverde, SrL v. United States*, 202 F.3d 1360, 1363 (Fed. Cir. 2000) (explaining that the "traditional tools of statutory construction" include an examination of the statute's text, structure, and legislative history, as well as an application of the relevant canons of interpretation).  I therefore begin my analysis with an examination of the statutory language itself.  The First Amendment states: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances."  U.S. Const. amend. I.  As discussed herein, I have also considered the relevant statutory language in 5 U.S.C. §§ 2301, 2302.  *See infra* ¶ 6.

¶4      I find that neither the Constitution, nor the Civil Service Reform Act (CSRA or the Act), explicitly states that a constitutional violation may be actionable as a PPP under section 2302(b)(12).  Nevertheless, the CSRA is not silent in this regard.   Rather, it states that it shall be a PPP for any employee to "take or fail to take any other personnel action if the taking of or failure to take such action violates any law, rule, or regulation implementing, or directly concerning, the merit system principles contained in section 2301 of this title."  5 U.S.C. § 2302(b)(12).  As noted above, one of the merit principles provides, in relevant part, that "[a]ll employees . . . should receive fair and equitable treatment in all aspects of personnel management . . ., and with proper regard for their privacy and constitutional rights."  5 U.S.C. § 2301(b)(2). Applying a straightforward reading of this language, there is no doubt that the First Amendment is a law.  Similarly, there is no question that the cited merit principle stresses the importance of an agency's treatment of its employees vis-à-

vis their constitutional rights.  The question, however, still remains whether the First Amendment either implements or directly concerns this tenet of federal personnel management.

¶5        In *Wells v. Harris*, 1 M.S.P.R. 208, 242-43 (1979), *modified on other grounds by Gende v. Department of Justice*, 23 M.S.P.R. 604 (1984), the Board declared invalid certain regulations promulgated by the Office of Personnel Management (OPM) on the grounds that they would necessarily require the commission of a PPP under 5 U.S.C. § 2302(b)(11) (1979) (current version at 5 U.S.C. § 2302(b)(12)).[1]  In reaching that conclusion, the Board relied on normal usage to define "implementing," as used therein, as meaning "to carry out, accomplish, fulfill or give practical effect to, in the context of a manifest purpose or design to prevent conduct which directly and substantially 'undermines' the merit system principles and the 'integrity' of the merit system." *Wells*, 1 M.S.P.R. at 243.  Recognizing that it would be hard to find a law more clearly designed to give effect to merit system principle (b)(6) than the law at issue there, 5 U.S.C. § 4303(a), the Board found it unnecessary to consider what the term "directly concerning" encompasses.  *Wells*, 1 M.S.P.R. at 242.

¶6        But it is noteworthy that, in construing section 2302(b)(11), the Board looked for general guidance to section 3(2) of the Act,[2] setting forth Congress' findings and statement of purpose, that PPPs should be defined so as to prevent "'conduct which undermines the merit system principles and the integrity of the merit system.'"  *Wells*, 1 M.S.P.R. at 242.  I also recognize that the Board has subsequently opined that a constitutional provision cannot be a law within the meaning of section 2302(b)(12).  *See Radford v. Office of Personnel Management*, 69 M.S.P.R. 250, 255 n.3 (1995); *Pollard v. Office of Personnel Management*, 52 M.S.P.R. 566, 570 n.3 (1992).  In both instances, without any

---

[1] Subsection (b)(11) was redesignated as subsection (b)(12) in 1998.

[2] *See* 5 U.S.C. § 1101 note.

explanation, the Board summarily concluded that "the constitutional provision which the merit system[] principle in section 2301(b)(2) incorporates cannot, of course, be both the merit system[] principle and the violated law, rule or regulation which implements or directly concerns the merit system[] principle." Despite the "of course," there is nothing obvious about this observation. Rather, in *Wells*, the Board determined that "laws" for purposes of section 2302(b)(11) could encompass those that were enacted previous and subsequent to the passage of the CSRA, as well as the provisions of the Act itself. *Wells*, 1 M.S.P.R. at 242. Thus, the mere fact that the Constitution was ratified prior to enactment of the CSRA and not expressly for the purpose of carrying out or addressing the statutory merit system principles does not render it outside the scope of section 2302(b)(12).

¶7        It is true, however, that in *Special Counsel v. Harvey*, 28 M.S.P.R. 595, 601-02 (1984), *rev'd on other grounds*, 802 F.2d 537 (D.C. Cir. 1986), the Board limited the definition of "implementing" adopted in *Wells* to apply to statutes that prescribe "processes and procedures that were deliberately designed to accomplish a specific result." It is apparent that the First Amendment reasonably can be construed as prescribing procedures designed to ensure the freedoms established therein. As such, I conclude that the First Amendment is not a law "implementing" a merit system principle, the violation of which would give rise to a PPP under section 2302(b)(12).

¶8        Yet, the question remains as to whether the First Amendment "directly concerns" a merit system principle. In *Harvey*, the Board addressed the meaning of "directly concerns" in section 2302(b)(12) for the first time. There, the Special Counsel brought various PPP charges against the respondent a Senior Executive Service (SES) manager, including that he violated section 2302(b)(12) by idling a subordinate SES employee in contravention of 5 U.S.C. § 3131(7). Section 3131(7) required that the SES be administered to protect senior executives from arbitrary and capricious actions. The case thus presented the

issue as to whether section 3131(7) implemented or directly concerned a merit system principle.  Because that provision did not prescribe the types of processes or procedures as necessary to find that it implemented a merit system principle, the Board went on to determine whether it directly concerned such principles.  The Board found that it did, and in doing so, looked to the purpose of section 2302(b)(12) as reflected in the CSRA's legislative history, "to make unlawful those actions which are inconsistent with merit principles, but which do not fall within the . . . [other] categories of personnel practices.*" Harvey*, 28 M.S.P.R. at 602.  As the Board noted, "[t]oo technical a reading of paragraph [(b)(12)] would defeat its purpose."  *Id.*  The Board found no significance in the ultimate adoption of the term "concerning" rather than "relating to," which appeared in another version of the bill, insofar as both terms have essentially the same meaning.  It found that the insertion of the word "directly" "warrants the conclusion that if a law does not 'implement' the merit principles, its connection to the merit principles must be clear."  *Id.* at n.13.

¶9        However, the Board did not in *Harvey*, or elsewhere, define or restrict the nature of the connection between the law and the merit system principles for purposes of section 2302(b)(12).  The dictionary broadly defines "connection" as "association" or "relationship."   Given the patent link between the First Amendment and the merit system principle that the federal service be managed with proper regard for employees' constitutional rights, I find that a plain reading of the statutory language compels the conclusion that the First Amendment is a law directly concerning section 2301(b)(2).

¶10       The agency has asserted that there are several cases in which the Board has impliedly or expressly held that an alleged constitutional violation does not constitute a PPP.  *See* CF, Tab 9 at 10-16; *Radford*, 69 M.S.P.R. at 254-55; *Pollard*, 52 M.S.P.R. at 569-70 & n.3; *Wells*, 1 M.S.P.R. at 215.  However, these cases are largely relevant only to prove that the merit principles are not self-executing and that section 2302(b)(12) requires a two-step analysis, i.e., a

finding that the action violates a law and that the law implements or directly concerns a merit system principle. *Wells*, 1 M.S.P.R. at 215. There is no dispute that the statute requires this two-step analysis in order to find a PPP under section 2302(b)(12).[3]

¶11    Thus, I find the agency's reliance on *Wells*, *Pollard*, and *Radford* to be unpersuasive. With the exception of the aforementioned unexplained footnotes in *Pollard* and *Radford*, those cases primarily concern the Board's application of the two-step analysis to section 2302(b)(12) claims, an approach that is not at issue here. Again, there seems to be an unstated assumption underlying the agency's position that making a constitutional violation actionable as a PPP under section 2302(b)(12) somehow conflates the two-step analysis into a claim of a direct violation of section 2301(b)(2). But regardless of any perceived circularity, there is no question that the First Amendment is a law directly concerning a merit system principle, and as such, its violation should be actionable as a PPP under section 2302(b)(12).

¶12    Furthermore, OSC has identified cases in which the Board implicitly found that an agency's action that violates an employee's or applicant's First Amendment rights constitutes a PPP. *See* CF, Tab 8 at 12-14 (citing *Moredock v. Department of Justice*, No. 02-3258, 2003 WL 26098542 (Fed. Cir. Jan. 10, 2003); *Special Counsel v. Environmental Protection Agency*, 79 M.S.P.R. 542 (1998), *aff'd sub nom. Hubbard v. Merit Systems Protection Board*, 205 F.3d 1315 (Fed. Cir. 2000)). Prior Board decisions have implicitly, if not explicitly, reflected support for finding that a First Amendment violation is actionable as a PPP under section 2302(b)(12). For example, in *Special Counsel v. Environmental Protection Agency*, the Special Counsel brought a complaint against the agency charging it with violating section 2302(b)(11) when it failed to

---

[3] I agree, however, that the fact that *Wells*, *Pollard*, and *Radford* arose in the context of the Board's review of regulations is not sufficient to distinguish them on the issue presented here.

select an applicant in violation of his First Amendment rights.  While the issue on review concerned the applicant's entitlement to back pay and did not focus on the merits of the underlying PPP, it is still relevant to the issue present here. Specifically, the Board not only found no error in the ALJ's finding that the agency violated section 2302(b)(11) when it did not select the applicant in violation of his First Amendment rights but affirmatively adopted that finding. *Id*. at 546.  In addition, in *Special Counsel v. Lynn*, 29 M.S.P.R. 666, 667 (1986), the Special Counsel filed a complaint against two individuals for removing another employee because of conduct protected under the First Amendment in violation of then-section 2302(b)(11).   The Special Counsel ultimately moved to dismiss the complaint because the employing agency disciplined the individuals for the same misconduct giving rise to the complaint.  In the decision granting that request, the Board did not challenge whether the constitutional violation could be actionable as a PPP.

¶13        I also have considered OSC's discussion of various federal circuit court decisions, which have held that federal employees who seek damages for constitutional claims against their employers arising from their employment are prohibited from pursuing those claims in federal court; instead, the exclusive mechanism for such claims is through the CSRA.  CF, Tab 8 at 15-18; *see Irizarry v. United States*, 427 F.3d 76, 77-78 (1st Cir. 2005); *Robbins v. Bentsen*, 41 F.3d 1195, 1201-03 (7th Cir. 1994); *Volk v. Hobson*, 866 F.2d 1398, 1400-04 (Fed. Cir. 1989); *McIntosh v. Turner*, 861 F.2d 524, 526 (8th Cir. 1988). Some of these circuit court decisions state that an alleged constitutional violation constitutes a PPP, or they otherwise reference the PPP described in 5 U.S.C. § 2302(b)(12) or the merit system principle at 5 U.S.C. § 2301(b)(2).  *See, e.g.*, *Ferry v. Hayden*, 954 F.2d 658, 661 & n.4 (11th Cir. 1992); *Saul v. United States*, 928 F.2d 829, 834 (9th Cir. 1991); *Petrini v. Howard*, 918 F.2d 1482, 1484 (10th Cir. 1990); *Spagnola v. Mathis*, 859 F.2d 223, 225 n.3 (D.C. Cir. 1988) (en banc).  However, with the exception of the *Volk* decision, these circuit

court decisions are persuasive but not controlling authority for the Board. *Fairall v. Veterans Administration,* [33 M.S.P.R. 33](#), 39, *aff'd,* [844 F.2d 775](#) (Fed. Cir. 1987). In addition, none of the aforementioned appeals, including *Volk*, required a resolution of the technical issue before us now on interlocutory appeal.

¶14    Member Robbins disagrees claiming that it "broadly expands the scope of the Board's jurisdiction . . . to consideration and application of constitutional law." Member Robbins' Separate Opinion (Sep. Op.), ¶ 2. However, his view of the Board's existing authority to adjudicate constitutional claims, and hence his criticism of my position as an unwarranted expansion of that authority, is not supported by precedent. It is true that the Board has consistently adhered to the principle that, as an administrative agency, it lacks authority to review challenges to the constitutionality of statutes.[4]    *See MacLean v. Department of Homeland*

---

[4] I believe that my colleague's reliance on *Elgin v. Department of the* Treasury, [132 S. Ct. 2126](#) (2012), to support his theory that "the Board has long avoided independent analysis of constitutional claims" is misplaced. Sep. Op., ¶ 5. Mr. Elgin had filed an appeal to the Board challenging his removal from federal service, effected pursuant to [5 U.S.C. § 3328](#), which bars individuals from federal employment who knowingly and willfully fail to register for the Selective Service. *Elgin*, 132 S. Ct. at 2131. The Board's ALJ dismissed the appeal for lack of jurisdiction, in pertinent part, on the ground that the Board lacks the authority to rule upon the constitutionality of a statute. *Id.* Elgin did not petition for review of this ruling to the full Board or the Federal Circuit, but, instead, filed in district court, joining his case with other plaintiffs. *Id.* The government sought to dismiss the cases on the grounds that the CSRA provided the exclusive remedial scheme for adjudicating the plaintiffs' claims, including their facial challenge to the constitutionality of [5 U.S.C. § 3328](#). *Elgin*, 132 S. Ct. at 2131.

The case ultimately reached the U.S. Supreme Court, which held that the CSRA precluded district court jurisdiction over the petitioners' challenge to the constitutionality of the statute. *Id.* at 2134. In its decision, the Court addressed, inter alia, the petitioners' argument that such a holding left them with no meaningful recourse for review because the Board lacked authority to declare a federal statute unconstitutional. *Id.* at 2136. It was in this context that the Court noted both the Board's longstanding refusal to pass upon the constitutionality of legislation, as well as its own previous statements acknowledging that adjudication of such issues is generally beyond the jurisdiction of administrative bodies. *Id.* Declining to decide whether the Board's view of its authority was correct, or even whether the "oft-stated principle that agencies cannot declare a statute unconstitutional is truly a matter of jurisdiction," the Court found that, regardless, the CSRA provided the exclusive remedial scheme for the

*Security*, [116 M.S.P.R. 562](#), 573-74 (2011), *rev'd on other grounds*, [714 F.3d 1301](#) (2013), *cert. granted*, 134 S. Ct. 2290 (2014); *Malone v. Department of Justice*, [14 M.S.P.R. 403](#), 406 (1983). Yet, the Board has also long recognized the distinction between authority to declare a statute unconstitutional and "its authority to adjudicate a constitutional challenge to an agency's application of a statute." *May v. Office of Personnel Management*, [38 M.S.P.R. 534](#), 538 (1988) (deciding to address whether the agency's termination of the appellant's annuity without adequate notice is consistent with fundamental concepts of due process).

¶15     Indeed, far from evidencing a disinclination to review constitutional challenges to agency actions, the holdings in *Wigen v. U.S. Postal Service*, [58 M.S.P.R. 381](#), 383 (1993), and *Delk v. Department of the Interior,* [57 M.S.P.R. 528](#), 530 (1993), cited by Member Robbins, are plainly predicated on the Board's exercise of jurisdiction to adjudicate such claims. The issues in those cases concerned, respectively, the application of the constitutional doctrines relating to the exclusion of evidence and prohibition against double jeopardy. While ultimately finding that these doctrines did not afford the appellants the protections claimed thereunder, the Board did not express any doubt as to its authority to reach and rule upon those claims.

¶16     Similarly, in *Stephen v. Department of the Air Force*, [47 M.S.P.R. 672](#), 684 n.12 (1991), the Board explicitly recognized that, even where an agency's action was authorized within the meaning of [5 U.S.C. § 7701](#)(c)(2)(C), the Board will nonetheless not sustain an action taken in violation of an employee's constitutional rights. In support, the Board cited numerous cases wherein it "adjudicated, as an independent affirmative defense, nonprobationary employees'

---

petitioners' facial challenge to the constitutionality of the statute barring their employment. *Id.* at 2136-37. In fact, in reaching that conclusion, the Court cited many instances in which the Board had adjudicated constitutional challenges to agency actions and deemed any distinction under the CSRA between the adjudication of these claims and those raising facial challenges to the constitutional validity of a statute to be "dubious at best." *Id.* at 2136 n.5.

constitutional challenges to appealable actions effected under statute or regulation." *Stephen*, 47 M.S.P.R. at 684 n.12 (citing *Cooper v. U.S. Postal Service*, 42 M.S.P.R. 174, 178 (1989) (upholding the admissibility of the appellant's custodial statement upon determining that the appellant had been advised of and had waived his Fifth Amendment rights under *Miranda*), *aff'd*, 904 F.2d 46 (Fed. Cir. 1990) (Table); *Sternberg v. Department of Defense*, 41 M.S.P.R. 46, 51 (1989) (reviewing the claim that the agency illegally searched the employee in violation of the Fourth Amendment); *Wentzel v. Department of the Interior*, 33 M.S.P.R. 344, 352-53 (determining whether the employee's speech was protected by the First Amendment), *aff'd*, 837 F.2d 1097 (Fed. Cir. 1987) (Table); *Svejda v. Department of the Interior*, 7 M.S.P.R. 108, 111 (1981) (holding that constitutional due process applies to a nonprobationary employee's removal from federal employment)); *see Chisolm v. U.S. Postal Service*, 7 M.S.P.R. 116, 119 (1981) (determining the admissibility of the appellant's statement under the Fifth Amendment).

¶17     Thus, while the Board has "steered clear" of reviewing facial challenges to the constitutional validity of federal statutes, our precedent and history simply do not support the conclusion that the Board has generally declined jurisdiction to review claims that an agency action violated an appellant's constitutional rights.

¶18     The Member charges that it "trivializes our Constitution" to recognize the Board's statutory jurisdiction to adjudicate constitutional claims either as affirmative defenses to adverse actions or in the context of our role under the CSRA's scheme for correcting PPPs in the federal civil service. The criticism seems tacitly grounded on the premise that the only laws covered under section 2302(b)(12) are those enacted for the specific purpose of implementing the merit system principles. However, as argued elsewhere in this opinion, such a construction of section 2302(b)(12) essentially renders meaningless the other category of laws covered, i.e., those "directly concerning" the merit system principles. In this, I simply disagree with my colleague that viewing the

Constitution as "directly concerning" not only the bedrock principles of equal treatment and fairness, but, specifically, the principle that the federal government administer its personnel system with due regard for the constitutional rights of its employees, diminishes the import of that document. Likewise, unlike my colleague, I do not see the "intriguing possibilities" that would ensue from recognizing the Board's statutory authority—whether in adjudicating chapter 75 affirmative defenses or remedying PPPs—to consider whether an agency action was taken in violation of an employee's First Amendment rights.

¶19 Finally, I have considered the parties' remaining arguments but none change the outcome.[5] Based on my review of the statutory language, legislative history, and relevant precedent, I conclude that the First Amendment is a law, rule, or regulation that directly concerns merit system principles.

_____
Susan Tsui Grundmann
Chairman

---

[5] I have also considered the Supreme Court's recent decision in *Lane v. Franks*, 134 S. Ct. 2369 (2014). There, the Court determined that the First Amendment protects a public employee who provided truthful sworn testimony, compelled by subpoena, outside the course of his ordinary job responsibilities. *Lane*, 134 S. Ct. at 2372-74. I find that the Court's discussion of relevant First Amendment principles and its holding in *Lane* does not affect my analysis of the narrow statutory construction issue before us on interlocutory appeal.

<u>SEPARATE OPINION OF MEMBER MARK A. ROBBINS</u>

in

*Special Counsel*
*Ex Rel. Vincent Cefalu v. Department of Justice*

MSPB Docket No. CB-1214-13-0187-T-1

¶1     I concur that the Board has jurisdiction over this matter.

¶2     I respectfully disagree with Chairman Grundmann's Separate Opinion (Sep. Op.) that the First Amendment to the U.S. Constitution is a law, rule, or regulation directly concerning the merit system principles contained in 5 U.S.C. § 2301. Such a view potentially trivializes our Constitution, and is contrary to Board precedent. It broadly expands the scope of the Board's jurisdiction, along with that of the Office of Special Counsel (OSC), to consideration and application of constitutional law, best left to Article III courts.

¶3     On a superficial level, the U.S. Constitution is a law. It, along with treaties, comprises the *supreme* law of the land. U.S. Const. Article VI. But to reduce the Constitution to the nature of a codified statute, which I believe is what was anticipated in Title 5 and subsequent case law requirements for enforcement of a merit system principle as a prohibited personnel practice (PPP), demeans the true nature of our Constitution. As the Preamble states, it was established "to form a more perfect Union, establish Justice, insure domestic Tranquility, provide for the common defense, promote the general Welfare, and secure the Blessings of Liberty[.]" Notably missing here is any mention of enforcing a merit system principle as a PPP.

¶4     The Chairman's Separate Opinion is a fair discussion and concession (as I too concede) of the close-call nature of the arguments presented by both the agency and OSC. Nonetheless, the Board has long implied or expressly held that an alleged constitutional violation does not constitute a PPP. The Chairman's

Separate Opinion simply disagrees with precedent and decides to move in a completely different direction.

¶5      As the U.S. Supreme Court noted in *Elgin v. Department of the Treasury*, [132 S. Ct. 2126](#), 2130 (2012), the Board has long avoided independent analysis of constitutional claims.[1]  The main exception is in the context of constitutional due process where the Supreme Court and our reviewing court have made clear that this constitutional right must be applied when taking an adverse action against a public employee, because specific statutes create a property interest in employment.  *See Gilbert v. Homar*, [520 U.S. 924](#) (1997); *Cleveland Board of Education v. Loudermill*, [470 U.S. 532](#) (1985); *Stone v. Federal Deposit Insurance Corporation*, [179 F.3d 1368](#), 1376 (Fed. Cir. 1999).

¶6      Otherwise, the Board has generally steered clear of reviewing constitutional claims.  *See, e.g.*, *Wigen v. U.S. Postal Service*, [58 M.S.P.R. 381](#), 383 (1993) (and cases cited therein) (the constitutional prohibition against double jeopardy applies only to defendants in criminal cases, not to petitioners in administrative proceedings before the Board); *Delk v. Department of the Interior*, [57 M.S.P.R. 528](#), 530-31 (1993) (and cases cited therein) (finding that the Supreme Court's decisions regarding the application of the exclusionary rule to proceedings other than criminal prosecutions do not provide a basis on which

---

[1] The Chairman's lengthy discussion of *Elgin* (Sep. Op. n.4) misses my point, namely, that administrative bodies avoid deciding constitutional issues absent jurisdiction being expressly granted in statute or judicial opinion, as due process is for the Board.  While not deciding the matter in *Elgin*, I find it instructive for the Supreme Court to have outlined a process that accommodates our constraint by noting that the Board is able to identify constitutional issues, gather the appropriate underlying facts, and pass the record up to the U.S. Court of Appeals for the Federal Circuit wherein lies the authority to consider and decide constitutional issues.  And the argument that the Court found "dubious," *Elgin*, 132 S. Ct at 2136 n.5—the petitioners' assertion that challenging an agency's actions on constitutional grounds is distinct from challenging the constitutionality of the statute upon which those actions were taken—is not an issue in the present case.

to extend the exclusionary rule to Board proceedings)[2]; *May v. Office of Personnel Management*, 38 M.S.P.R. 534, 538 (1988) (holding that the Board is without authority to determine the constitutionality of federal statutes); *but see Wiley v. Department of Justice*, 89 M.S.P.R. 542, 545, ¶ 5 (2001) (the Board reviewed whether searching a government employee's private property was subject to Fourth Amendment restraints).

¶7     I recognize a Fifth Amendment *Miranda* warning is required when an employee is subjected to a custodial interrogation. However, this is necessary only when, during the administrative investigation, the employee must avoid discussing the charged misconduct (always criminal in nature) because he is trying to protect himself against a self-incriminating disclosure that he reasonably believes could be used later in his own criminal prosecution or could lead to other evidence that might be so used. *See Kastigar v. United States*, 406 U.S. 441, 444–45 (1972); *Weston v. U.S. Department of Housing and Urban Development*, 724 F.2d 943, 947-48 (Fed. Cir. 1983); *Tannehill v. Department of the Air Force*, 58 M.S.P.R. 219, 222 (1993). Thus, the constitutional claim in such cases is relevant only because of a possible criminal conviction, not as protection against potential administrative adverse action.

¶8     To the specific constitutional issue presented in the instant case, the Board has previously declined to go where the Chairman's Separate Opinion now takes us. In *Wells v. Harris*, 1 M.S.P.R. 208, 215 (1979), *modified on other grounds by Gende v. Department of Justice*, 23 M.S.P.R. 604 (1984), the Board noted that the legislative history of the merit system principles indicates that the principles were

---

[2] I do not understand the Chairman's assertion that the *Wigen* and *Delk* decisions "are plainly predicated on the Board's exercise of jurisdiction to adjudicate such claims." Sep. Op., ¶ 15. In both cases the Board noted and affirmed decisions below that did not apply the appellants' constitutional claims, noting that, as an administrative body, double jeopardy and the exclusionary rule are outside the Board's purview. Holding such is certainly not an assertion of jurisdiction over the substance of the constitutional claims under other sets of facts.

"stated in hortatory terms" and were "not self-executing." The Board delineated a two-step analysis for establishing that an agency's action constituted a PPP under section 2302(b)(12): (1) the action violates a law, rule, or regulation; and (2) the violated law, rule, or regulation is one that implements or directly concerns the merit system principles. *Wells*, 1 M.S.P.R. at 215.

¶9      In *Pollard v. Office of Personnel Management*, 52 M.S.P.R. 566, 569-70 & n.3 (1992), the Board discussed the *Wells* decision, and rejected the appellant's equal protection clause challenge to an OPM rule because he had not identified any law, rule, or regulation implementing or directly concerning the merit system principle at section 2301(b)(2). The Board specifically noted in *Pollard* that "the constitutional provision which the merit systems [sic] principle in section 2301(b)(2) incorporates cannot, of course, be both the merit systems [sic] principle and the violated law, rule or regulation which implements or directly concerns the merit systems [sic] principle." *Pollard*, 52 M.S.P.R. at 570 n.3.

¶10     Similarly, the Board considered, in *Radford v. Office of Personnel Management*, 69 M.S.P.R. 250, 254-55 (1995), an appellant's assertion that implementation of an OPM regulation would require the commission of a PPP under section 2302(b)(12) by violating his constitutional right to equal protection. The Board found his assertion unavailing in part because the constitutional provision did not constitute a law, rule, or regulation implementing or directly concerning the merit system principles in section 2301(b)(2). 69 M.S.P.R. at 255 & n.3.[3]

---

[3] Regarding both *Pollard* and *Radford*, the Chairman's Separate Opinion criticizes the Board for having summarily concluded this proposition without explanation, noting that "[d]espite the 'of course,' there is nothing obvious about this observation." Sep. Op., ¶ 6. And yet, a few paragraphs later the opinion similarly concludes that "the patent link between the First Amendment and the merit principle . . . compels the conclusion that the First Amendment is a law directly concerning section 2301(b)(2)." Sep. Op., ¶ 9.

¶11        Moreover, the Federal Circuit has recognized that constitutional violations do not automatically give rise to PPPs under 5 U.S.C. § 2302(b)(12).  *See Price v. Social Security Administration*, 398 F.3d 1322, 1326 (Fed. Cir. 2005).  In *Price*, the petitioner argued that, because the Board found her due process rights had been violated, the agency thereby committed a PPP.  *Id.*  The Federal Circuit rejected outright the argument that denying constitutional due process rights automatically gives rise to a PPP.  *Id.*  While *Price* arose in the context of a request for attorney fees and not a corrective action case, it is significant because, had the Federal Circuit accepted the petitioner's argument, it would have acknowledged either that the merit system principles are self-executing, or that the Constitution is, in fact, a law, rule, or regulation that directly concerns that merit principle.  The Court declined to do either.

¶12        Further supporting the Board's traditional view of its limited role in its consideration of constitutional claims, the Federal Circuit has taken it upon itself to address such claims even when they are raised for the first time before the court, rather than to remand to the Board for consideration and exhaustion.  *See Sarvasova v. Office of Personnel Management*, 126 F. App'x 954 (Fed. Cir. 2005); *Beard v. General Services Administration*, 801 F.2d 1318, 1321 (Fed. Cir. 1986).

¶13        The Chairman agrees with OSC that the Board has implicitly found that an agency action that violates an employee's or applicant's First Amendment rights constitutes a PPP.  *See* CF, Tab 8 at 12-14 (citing *Moredock v. Department of Justice*, No. 02-3258, 2003 WL 26098542 (Fed. Cir. Jan. 10, 2003); *Special Counsel v. Environmental Protection Agency*, 79 M.S.P.R. 542 (1998), *aff'd sub nom. Hubbard v. Merit Systems Protection Board*, 205 F.3d 1315 (Fed. Cir. 2000)).  These cases, however, are easily distinguishable.

¶14        In *Special Counsel v. Environmental Protection Agency*, 79 M.S.P.R. at 555, the Board denied OSC's request for corrective action in the form of back pay and monetary damages.  In so doing, we noted in the background that in

*Hubbard v. Environmental Protection Agency*, [982 F.2d 531](#), 532 (D.C. Cir. 1992), the court had affirmed the U.S. District Court's finding that the agency's failure to hire Mr. Hubbard violated his First Amendment rights. But the nature of the PPP in question was not a contested or dispositive issue before the Board.

¶15    In *Moredock*, 2003 WL 26098542, at *1, the Federal Circuit recited[4] that the chief ALJ granted OSC's request for corrective action upon finding that the agency committed a PPP when it removed Mr. Moredock in violation of his free speech rights, the parties entered into a settlement agreement to resolve how the agency would comply with the chief ALJ's order, and the Board dismissed the appeal as settled. Under these circumstances, there was no need for the Board to address, let alone discuss, the chief ALJ's findings. To the extent that OSC asserts that the Board "implicitly" acknowledged subject matter jurisdiction in *Moredock* by enforcing the agreement, CF, Tab 8 at 14, jurisdiction is a separate issue from OSC's legal theory for seeking corrective action for a PPP under [5 U.S.C. § 2302](#)(b)(12).

¶16    The present case involves the First Amendment, but the Chairman's rationale and the interlocutory order of the ALJ are not so limited. The Board is potentially inviting every adverse action to be turned into a consideration and determination of an appellant's constitutional rights, either by way of an OSC investigation, or as an affirmative defense raised in an appeal to the Board. Even a quick review of the Constitution raises some intriguing possibilities for creative constitutionally-based affirmative defenses.

---

[4] The Board did not issue a published decision in this matter, so I rely on the Federal Circuit's discussion of this background information.

¶17　　In the absence of any specific authority that requires us to modify or overrule our *Wells/Pollard/Radford* line of cases, I do not believe that provisions of the U.S. Constitution equate to laws, rules, or regulations that implement or directly concern the merit system principles.


_____

Mark A. Robbins
Member